# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| RENE ALVAREZ, *et al.*, | |
| Plaintiffs, | Case No. 13-cv-00174-J-99-TJC-MCR |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO UNITED STATES'
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
OR, IN THE ALTERNATIVE, FOR IMPROPER VENUE, OR FOR A STAY**

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………………...1

STANDARDS OF REVIEW…………………………………………………………………...2

ARGUMENT………………………………………………………………………………...4

I. THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
FLORIDA HAS SUBJECT MATTER JURISDICTION OVER THE CLAIMS
PRESENTED………………………………………………………………………………...4

    A. The contractor exception does not deprive this Court of subject
matter jurisdiction…………………………………………………………………………...4

    B. The discretionary function exception does not deprive this Court of subject
matter jurisdiction…………………………………………………………………………9

        1. Agency officials and contracting officers did not conduct thorough or even
cursory background checks on McLeod as required by Federal Acquisition
Regulations…………………………………………………………………………12

        2. Senior agency officials violated applicable ethics laws and regulations by
accepting and/or soliciting gifts and valuable favors from McLeod and
FEBG and by failing to report their financial interests in FEBG…………..……19

        3. Agency officials failed to ensure McLeod and FEBG did not give specific
financial investment advice to government employees in connection with
agency retirement financial education activities…………………………………23

        4. None of the acts complained of involve the permissible exercise of policy
discretion………...............................................................................................30

    C. The misrepresentation exception does not deprive this court of subject matter
jurisdiction……………………………………………………………………………….32

    D. The interference with contract rights exception does not deprive this Court of
subject matter jurisdiction………………………………………………………………..39

II. ALL PLAINTIFFS PROPERLY EXHAUSTED THEIR ADMINISTRATIVE
REMEDIES...……………………………………………………………………………….42

III. VENUE IS PROPER IN THE MIDDLE DISTRICT OF FLORIDA………………………46

IV. THE FEDERAL EMPLOYEES COMPENSATION ACT IS INAPPLICABLE
TO THIS CASE……………………………………………………………………….….......55

V. CONCLUSION……………………………………………………………………………57

## TABLE OF AUTHORITIES

<u>CASES</u>

*Adams v. United States,*
   615 F.2d 284 (5th Cir. 1980)……………………………………………...43, 44, 45, 46

*American Coach Lines of Orlando, Inc. v. North American Bus Indus., Inc.,*
   2011 WL 653524 (M.D. Fla. Feb 14, 2011) ……………………………………………41

*Andrews v. United States,*
   121 F.3d 1430 (11th Cir. 1997)……………………………………...…………10, 26, 27, 28

*Appleton v. United States,*
   69 F.Supp.2d 83, 89 (D.D.C. 1999)…………………………………………………...41

*Appley Brothers v. United States,*
   7 F.3d 720 (8th Cir. 1993)……………...…………………………………...34, 35, 38

*Appley Brothers v. United States,*
   164 F.3d 1164 (8th Cir. 1999)…………...……………………………………...14, 18

*Art Metal-USA, Inc. v. United States,*
   753 F.2d 1151 (D.C. Cir. 1985)………………………………………………………41

*Audio Odyssey, Ltd., v. United States,*
   255 F.3d 512 (8th Cir. 2001)……………...…………………………………...14, 15, 18

*Autery v. United States,*
   992 F.2d 1523 (11th Cir. 1993)……………………………….………………...10, 11

Avasthi v. United States,
   608 F.2d 1059 (5th Cir. 1979)………………………………………...……………55

*B&A Marine Co., Inc. v. American Foreign Shipping Co., Inc.,*
   23 F.3d 709 (2d Cir. 1994)……………………………………………………………..7

*Baer v. United States,*
   2011 WL 6131789 (D.N.J. 2011)…………………………………………………21, 22

*Beattie v. United States,*
   756 F.2d 91 (D.C. Cir. 1985), *abrogated on other grounds,*
   *Smith v. United States,* 507 U.S. 197 (1993)………………………………………...53, 54

*Berkovitz v. United States,*
   486 U.S. 531 (1988)……………………………...10, 11, 12, 13, 14, 16, 17, 18, 19, 30, 31

iii

*Block v. Neal,*
    460 U.S. 289 (1983)……………………………………………...32, 33, 34, 36, 39

*Boda v. United States,*
    698 F.2d 1174 (11th Cir.1983)………………………...…………………………...37

*Bonner v. Pritchard,*
    661 F.2d 1206 (11th Cir. 1981)……………………………………………………..4

*Bowman v. United States,*
    848 F.Supp. 979 (M.D. Fla. 1994)……………………………………………...25, 26

*Burchfield v. United States,*
    168 F.3d 1252 (11th Cir. 1999)…………………………………………...42, 43, 44, 45

*Castro v. United States,*
    608 F.3d 266 (5th Cir. 2010)……………………………………………………19

*C.H. James & Co., Inc. v. Fed. Food Marketers Co.,*
    927 F.Supp. 187 (S.D.W.V. 1996)………………………………………………54

*Christian Dalloz, S.A. v. Holden,*
    1990 WL 121342 (E.D. Pa. Aug. 20, 1990)………………………………………54

*Cranford v. United States,*
    466 F.3d 955 (11th Cir. 2006)……………………………………………………...25

*Davis v. United States,*
    340 F.Supp.2d 79 (D. Mass. 2004)……………………………………………………21

*Delong Equip. Co. v. Washington Mills Abrasive Co.,*
    840 F.2d 843 (11th Cir. 1988)…………………………………………………….3

*Delvin v. United States,*
    352 F.3d 525 (2d Cir. 2003)………………………………………………………...34

*Denson v. United States,*
    574 F.3d 1318 (11th Cir. 2009)……………………………………………20, 22, 31

*Downs v. United States Army Corps of Engineers,*
    333 Fed.Appx. 403 (11th Cir. 2009)…………………………..9, 10, 12, 21, 24, 28, 29, 30

*Downs v. United States Army Corps of Engineers,*
    2013 WL 1715346 (11th Cir. April 19, 2013)………………………………………...25

*Eskine v. United States,*
  1995 WL 495903 (E.D.La. Aug. 18, 1995)……………………………………………..42

*Exxon Mobil Corp. v. Allapattah Services, Inc.,*
  545 U.S. 546 (2005)………………………………………………………………...52

*Finley v. United States,*
  490 U.S. 545 (1989)………………………………………………………………...52

*Fleming v. United States,*
  69 F.Supp.2d 837 (W.D.Va. 1999)……………………………………………..15, 18

*Florida Medical Ass'n, Inc. v. Dep't of Health, Education, & Welfare,*
  2011 WL 4459926, (M.D. Fla. May 18, 2011)…………………………………………54

*Free v. United States,*
  885 F.2d 840 (11th Cir. 1989)……………………………………………………...42

*Frigard v. United States,*
  862 F.2d 201 (9th Cir. 1988)……………………………………………………...37, 38

*Goewey v. United States,*
  886 F.Supp. 1268 (D.S.C. 1995)…………………………………………………18

*Hiatt v. United States,*
  910  F.2d 737 (11th Cir. 1990)……………………………………………………..43

*Hines v. Fiserv, Inc.,*
  2010 WL 1249838 (M.D.Fla. Mar. 25, 2010)…………………………………….38, 39

*In re Air Crash Near Rio Grande Puerto Rico on Dec. 3, 2008,*
  2013 WL 646257 (S.D.Fla. Feb. 21, 2013)…………………………………......3, 43, 45

*Jason Enterprises of Jacksonville, Inc. v. FPL Group, Inc.,*
  162 F.3d 1290 (11th Cir. 1998)……………………………………………………41

*JBP Acquisitions, L.P. v. United States*
  224 F.3d 1260 (11th Cir, 2000)…………………………………………………...34, 35

*Knecht v. United States,*
  242 F.2d 929 (3d Cir. 1957)……………………………………………………...49

*Kuhlman v. United States*
  822 F.Supp.2d 1255 (M.D.Fla. 2011)…………………………………………….9

La Rosa Del Monte Exp., Inc. v. G.S.W. Enterprises Corp.,
    483 So.2d 472 (D.C. App. Fla. 1986)……………………………………………41

Lawrence v. Dunbar,
    919 F.2d 1525 (11th Cir. 1990)……………………………………………...2, 3

Limone v. United States,
    579 F.3d 79 (1st Cir. 2009)……………………………………………………20

Logue v. United States,
    412 U.S. 521 (1973)……………………………………………………5, 6, 7, 9

Manko v. United States,
    830 F.2d 831 (8th Cir. 1987)…………………………………………………40

Marks v. Fields,
    160 Fla. 789, 36 So.2d 612 (1948)..............................................................41

McNeil v. United States,
    508 U.S. 106 (1993)…………………………………………………………...43

Means v. United States,
    176 F.3d 1376 (11th Cir. 1999)……………………………………………4, 6, 7

Medina v. United States,
    259 F.3d 220 (4th Cir. 2001)…………………………………………………20

Metro Aviation Inc. v. United States,
    2010 WL 1881875, (D.Mont. May 10, 2010)………………………………50

Metropolitan Life Ins. Co. v. Atkins
    225 F.3d 510 (5th Cir. 2000)…………………………………………………34

Miller v. Aldridge,
    1989 WL 62503 (E.D. La. June 5, 1989)…………………………………...55

Miles v. Naval Aviation Museum Foundation,
    289 F.3d 715 (11th Cir. 2002)………………………………10, 11, 19, 30

Moessmer v. United States,
    760 F.2d 236 (8th Cir. 1985)…………………………………………………41

Morgan v. United States,
    2000 WL 34012857 (M.D.Fla. Dec. 12, 2000)……………………………..43

*Mundy v. United States,*
    983 F.2d 950 (9th Cir. 1993)……………………………………………………34, 40, 41

*Nelson v. Target Corp.,*
    2009 WL 2150893, (M.D. Fla. July 13, 2009)……………………………………..41

*Newmann v. United States,*
    938 F.2d 1258 (11th Cir. 1991)………………………………………………………57

*Noble v. United States,*
    216 F.3d 1229 (11th Cir. 2000)……………………………………………3, 4, 55, 56, 57

*Noisette v. Geithner,*
    693 F.Supp.2d 60 (D.D.C. 2010)………………………………………………………...54

*Nurse v. United States,*
    226 F.3d 996 (9th Cir. 2000)………………………………………………………………20

*Ochran v. United States,*
    117 F.3d 495 (11th Cir. 1997)…………………………………………………...12, 21, 31

*Olson v. United States,*
    175 F.2d 510 (8th Cir. 1949)……………………………………………………........49

*Patterson & Wilder Constr. Co., Inc. v. United States*
    226 F.3d 1269 (11th Cir. 2000)……………………………………………..4, 5, 6, 7, 8

*Pearson v. United States,*
    831 F.Supp.2d 514 (D.Mass. 2011)………………………………………………...39

*Phillips v. United States,*
    956 F.2d 1071 (11th Cir. 1992)……………………………………………………30

*Powers v. United States,*
    996 F.2d 1121 (11th Cir. 1993)……………………………………………………10

*Preston v. United States*
    596 F.2d 232 (7th Cir. 1979)…………………………………………………...36, 37

*Prisco v. Talty,*
    993 F.2d 21 (3d Cir. 1993)………………………………………………………20

*Raflo v. United States,*
    157 F.Supp.2d 1 (D.D.C. 2001)………………………………………………………50

*Raz v. United States,*
    343 F.3d 945 (8th Cir. 2003)……………………………………………………20

*Red Lake Band of Chippewa Indians v. United States*
    800 F.2d 1187 (D.C.Cir. 1986)……………………………………………………..21

*Redmond v. United States,*
    518 F.2d 811 (7th Cir. 1975)…………………………………………………...36, 37

*Reuber v. United States,*
    750 F.2d 1039 (D.C. Cir. 1984), *overruled on other grounds,*
    *Kauffman v. Anglo-American School of Sofia,*
    28 F.3d 1223 (D.C. Cir. 1994)……………………………………………………...53

*Richards v. United States,*
    396 U.S. 1 (1962)…………………………………………………...46, 47, 48, 49, 50

*Rise v. United States,*
    630 F.2d 1068 (5th Cir. 1980)……………………………………………………...45

*Robert Juan Dartez, LLC v. United States,*
    824 F.Supp.2d 743 N.D. Tex (2011)…………………………………………………22

*S.E.C. v. E-Smart Tech., Inc.*
    ____ F.Supp.2d ___, 2013 WL 772915 (D.D.C. Mar. 1, 2013)…………………………54

*Small v. United States,*
    333 F.2d 702 (3d Cir. 1964)……………………………………………………...41

*Smith v. United States,*
    507 U.S. 197 (1993)…………………………………………………...51, 52, 53

*Sosa v. Alvarez-Machain*
    542 U.S. 692 (2004)……………………………………………………...50

*Sowell v. United States,*
    835 F.2d 1133 (5th Cir. 1988)……………………………………………………40, 41

*Spotts v. United States,*
    562 F.Supp.2d 46 (D.D.C. 2008)……………………………………………………...49

*Stalley v. Orlando Reg'l Healthcare Sys.,*
    524 F.3d 1229 (11th Cir. 2008)……………………………………………………..2

*Sutton v. United States,*
    819 F.2d 1289 (5th Cir. 1987)……………………………………………………...20

*Thames Shipyeard & Repair Co. v. United States,*
    350 F.3d 247 (1st Cir. 2003)…………………………………………………19, 20

*Transco Leasing Corp. v. United States,*
    896 F.2d 1435 (5th Cir. 1990)…………………………………………......…45, 46

*Turner v. United States,*
    514 F.3d 1194 (11th Cir. 2008)………………………………………………42, 44, 45

*United States v. Gaubert*
    499 U.S. 315 (1991)…………………………………………………9, 10, 11, 25, 30

United States v. Neustadt,
    366 U.S. 696 (1961)…………………………………………………...32, 36, 37

*United States v. Varig Airlines,*
    467 U.S. 797 (1984)…………………………………………………………13, 14

*Walker v. United States,*
    471 F.Supp. 38 (M.D.Fla. 1978)……………………………………………………46

*Wood v. United States,*
    290 F.3d 29 (1st Cir. 2002)……………………………………………………..17, 18

## STATUTES, RULES & REGULATIONS

5 U.S.C. § 4103(a)(1)…………………………………………………………………23

5 U.S.C. § 4118(a)……………………………………………………………………23

5 U.S.C. § 4118(a)(2)…………………………………………………………………23

5 U.S.C. § 4118(c)…………………………………………………………………...23, 24

5 U.S.C. § 8101……………………………………………………………2, 3, 54, 55

5 U.S.C § 8101(5)……………………………………………………………………..55

5 U.S.C. § 8102……………………………………………………………………2, 3

5 U.S.C. § 8102(a)……………………………………………………………………55

5 U.S.C. § 8116(c)…………………………………………………………………...2, 3

5 U.S.C. § 8350……………………………………………………………………23

18 U.S.C. § 201……………………………………………………………....19, 21

18 U.S.C. § 203……………………………………………………………….19, 21

18 U.S.C. § 208……………………………………………………………….19, 21

28 U.S.C. § 1346(b)…………………………………………………….1, 4, 49, 52

28 U.S.C. § 1367(a)………………………………………………………….51, 52

28 U.S.C. § 1402(b)………………………………………………….2, 46, 49, 52, 53

28 U.S.C. § 1404(a)…………………………………………………………...51

28 U.S.C. § 1406……………………………………………………………...51

28 U.S.C. § 2402……………………………………………………………...58

28 U.S.C. § 2671………………………………………………………….1, 2, 4

28 U.S.C. § 2672…………………………………………………………..45, 46

28 U.S.C. § 2674……………………………………………………………...40

28 U.S.C. § 2675(a)……………………………………………….2, 3, 42, 44, 45

28 U.S.C. § 2680(a)………………………………………………………….2, 9

28 U.S.C. § 2680(h)………………………………………………….2, 32, 39, 40

5 C.F.R. § Part 410…………………………………………………………...23

5 C.F.R. § 2635.101(b)(4)……………………………………………………21

5 C.F.R. § 2635.101(b)(8)……………………………………………………21

28 C.F.R. § 14.2……………..………………………………………………45

48 C.F.R. § 9.103……………………………………………………………...15

48 C.F.R. § 9.103(a)………………………………………………………….16

48 C.F.R. § 9.103(b)………………………………………………………….16

48 C.F.R. § 9.104-1………………………………………………………..12, 16

48 C.F.R. § 9.104-1(d)……………………………………………………….16

48 C.F.R. § 9.105-1(a)……………………………………………………….16

48 C.F.R. § 9.105-1(c)…………………………………………………………………...17

FED. R. CIV. P. 12(b)(6)…...........................................................................................2

## OTHER AUTHORITY

Restatement (Second) of Torts § 323 (1965)……………………………………………33

## INTRODUCTION

Plaintiffs bring their claims against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq*., and 28 U.S.C. § 1346(b) (the "FTCA").  The Plaintiffs claim money damages for losses proximately caused by the negligence and wrongful acts of various federal employees who, within the scope of their office and employment, negligently engaged and endorsed Kenneth Wayne McLeod to conduct retirement education and planning seminars for federal law enforcement and other employees of the United States, negligently failed to supervise McLeod to insure agency seminars did not involve providing specific financial investment advice to those in attendance, negligently failed to properly vet and/or investigate McLeod and FEBG over a twenty-year period, and negligently failed to adhere to ethical rules that would have prevented McLeod's long-term fraudulent scheme.  These employees acted within the scope of their duties as employees of the United States, under circumstances where the United States, if it were a private person, would be liable to the Plaintiffs under the laws of the State of Florida.

Specifically, the Complaint contains separate Counts alleging negligence, negligent retention and supervision, negligent infliction of emotional distress, breach of fiduciary duties, and aiding and abetting McLeod's breach of fiduciary duties. Although McLeod's scheme spanned the entire United States, McLeod operated his Ponzi scheme entirely from his office in Jacksonville, Florida.  Plaintiffs are mostly current or retired federal law enforcement agents who were exposed to McLeod in connection with government agency retirement and financial education activities.

On May 3, 2013, the Government filed a motion to dismiss the instant action for lack of subject matter jurisdiction or lack of venue, or alternatively, to stay the case because the

government asserts there is a substantial question of coverage under the Federal Employees Compensation Act, 5 U.S.C. §§ 8101, 8102, 8116(c).  Specifically, the government asserts a lack of subject matter jurisdiction under the FTCA's contractor exception, 28 U.S.C. § 2671, the FTCA's discretionary function exception, 28 U.S.C. § 2680(a), and the misrepresentation and interference with contract rights exceptions found at 28 U.S.C. § 2680(h). The government also claims venue is improper in the Middle District of Florida under 28 U.S.C. § 1402(b) and that some of the Plaintiffs who filed joint administrative claims with their spouse have, for that reason, failed to exhaust their administrative remedies as required by 28 U.S.C. § 2675(a).  For the reasons that follow, the government's motion to dismiss should be denied and the case should not be stayed.

## STANDARDS OF REVIEW

The government presents only "facial attacks" to subject matter jurisdiction under the FTCA's contractor exception, 28 U.S.C. § 2671, the FTCA's discretionary function exception, 28 U.S.C. § 2680(a), and the misrepresentation and interference with contract rights exceptions found at 28 U.S.C. § 2680(h). Def. Mem. at  11.  When defending against such facial attacks, plaintiffs enjoy "safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised," and "the court must consider the allegations in the plaintiff's complaint as true."  *Stalley v. Orlando Reg'l Healthcare Sys.,* 524 F.3d 1229, 1233 (11th Cir. 2008)(quoting *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007)); *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).  For these challenges, this Court "is required 'merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion.'" *Stalley,* 524 F.3d at 1233 (quoting *Lawrence*, 919 F.2d at 1529).

2

Regarding the government's venue challenge, Plaintiffs must present "only a *prima facie* showing of venue" and "[t]he facts as alleged in the complaint are taken as true, to the extent they are uncontroverted by defendant's affidavits."[1]  *Delong Equip. Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 845 (11th Cir. 1988)(citing *Black v. Acme Markets, Inc*., 564 F.2d 681, 683 n. 3 (5th Cir.1977)).  "All pleadings and affidavits introducing evidence relating to jurisdictional facts are to be construed in the light most favorable to the plaintiff." *Delong Equip. Co.,* 840 F.2d at 845 (quoting *Vest v. Waring,* 565 F.Supp. 674, 693 (N.D.Ga.1983)).

The government presents a "factual attack" to subject matter jurisdiction in its presentation of certain administrative claims filed jointly, arguing these plaintiffs failed to exhaust their administrative remedies as required by 28 U.S.C. § 2675(a). Def. Mem. at 11.  A factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside of the Complaint, such as testimony and affidavits, may be considered.  *Lawrence*, 919 F.2d at 1529; *In re Air Crash Near Rio Grande Puerto Rico on Dec. 3, 2008,* 2013 WL 646257, *2 (S.D.Fla. Feb. 21, 2013).  "All pleadings and affidavits introducing evidence relating to jurisdictional facts are to be construed in the light most favorable to the plaintiff." *Delong Equip. Co.,* 840 F.2d at 845 (quoting *Vest v. Waring*, 565 F.Supp. 674, 693 (N.D.Ga.1983)).

Finally, the government's request for a stay of the instant action under *Noble v. United States,* 216 F.3d 1229 (11th Cir. 2000) requires this Court to determine whether a "substantial question" exists "as to whether or not the injury occurred in the performance of the employee's duty " so as to bring it within the coverage of  the Federal Employees Compensation Act, 5 U.S.C. §§ 8101, 8102, 8116(c).  *Noble,* 216 F.3d at 1235.  If this Court concludes "as a matter of

---

[1] The Government has not presented any affidavits or evidence which relates to their venue challenge.

law that, viewing all of the circumstances, the Secretary could not find FECA coverage" of the

alleged injuries, then the action should not be held in abeyance pending a coverage determination

under FECA. *Noble,* 216 F.3d at 1235 (quoting *Concordia v. United States Postal Serv.*, 581

F.2d 439, 442-44 (5th Cir.1978)).[2]

**ARGUMENT**

I.     **THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA HAS SUBJECT MATTER JURISDICTION OVER THE CLAIMS PRESENTED.**

A.     <u>**The contractor exception does not deprive this Court of subject matter jurisdiction.**</u>

The FTCA operates as a limited waiver of the United States' sovereign immunity for "injury or

loss of property ... caused by the negligent or wrongful act or omission of any employee of the

Government while acting within the scope of his office or employment, under circumstances

where the United States, if a private person, would be liable to the claimant in accordance with

the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The alleged

tortfeasor's status as an employee of the government is essential to a finding of liability under the

FTCA. *Patterson & Wilder Constr. Co., Inc. v. United States,* 226 F.3d 1269, 1273-1274 (11th

Cir. 2000).   *See also Means v. United States*, 176 F.3d 1376, 1379 (11th Cir. 1999)(citing

*Sheridan v. United States*, 487 U.S. 392, 400-401 (1988)). The FTCA defines "employee of the

government" to include "officers or employees of any federal agency ... and persons acting on

behalf of a federal agency in an official capacity, temporarily or permanently in the service of the

United States, whether with or without compensation." 28 U.S.C. § 2671. As this definition

makes clear, even private individuals who are not on the government's payroll may be considered

---

[2] Decisions of the United States Fifth Circuit Court of Appeals issued on or before September 30, 1981 are binding as precedent in the Eleventh Circuit. *See Bonner v. Pritchard,* 661 F.2d 1206, 1207 (11th Cir. 1981)(*en banc.*).

4

employees for purposes of establishing the government's liability under the statute. *Patterson & Wilder Constr. Co., Inc.,* 226 F.3d at 1274.

The government, citing *Logue v. United States,* 412 U.S. 521 (1973) as "controlling," claims it should not be liable "to the extent that any of the Plaintiffs' alleged injuries were not caused by an employee of the government, but by a contractor or the contractor's employee." Def. Mem. at 15.  Plaintiffs agree that contractors are excluded from the FTCA's waiver of sovereign immunity, but Plaintiffs have not sued the United States on any theory of vicarious liability relating to McLeod or FEBG.  Plaintiffs have sued the United States exclusively for the negligent and wrongful acts of the government's employees.  *See e.g.* Compl. ¶¶ 135 ("contracting officers"), 136 ("senior agency officials"), 138 ("contracting officers and senior agency officials"), 139 ("senior agency officials and contracting officers"), 144 ("senior agency officials" and "other agency employees"), 152 ("agency officials and contracting officers"), 153 ("senior agency officials"), 154 ("senior agency officials"), 163 ("retirement counselors and senior officials"), 166 ("agency officials"), 171 ("the United States"), 178 ("the United States"), 181 ("the United States, acting through its employees").

The Supreme Court's decision in *Logue* demonstrates that the contractor exception does not apply to this case.  In *Logue,* parents brought suit against the United States under the FTCA to recover for the wrongful death of their son who, after initially attempting suicide by slashing his wrists, hanged himself at a time when he was a federal prisoner in Nueces County jail. *Logue,* 412 U.S. at 524-525.  The district court held the United States liable for the negligence of the employees of the county sheriff **_and_** for the negligence of Bowers, a United States Marshal.  *Id.* at 525.  The United States Court of Appeals for the Fifth Circuit reversed, stating in its opinion:

> We interpret (18 U.S.C. § 4002) as fixing the status of the Nueces County jail as that of a 'contractor.' Title 28 U.S.C., Sec. 2671. ... This insulates the United

> States from liability under the FTCA for the negligent acts or omissions of the
> jail's employees. We find no support in the record for holding that Deputy Marshal
> Bowers had any power or authority to control any of the internal functions of the
> Nueces County jail. The deputy marshal, accordingly, violated no duty of
> safekeeping with respect to the deceased.

*Logue,* 412 U.S. 525 (quoting *Logue v. United States,* 459 F.2d 408, 411 (5th Cir. 1972)).   The

Supreme Court vacated and remanded the case, stating:

> While we … agree with the conclusion of the Court of Appeals that the
> Government was not liable for the negligence of the employees of Nueces
> County, we disagree with its implicit determination that such a conclusion ends
> the case. For the District Court imposed liability on the Government, not only for
> the negligent acts of employees of the Nueces County sheriff, but also for
> negligent acts of Deputy Marshal Bowers, who was concededly an employee of
> the Government. The District Court found that Bowers, knowing of the prisoner's
> suicidal tendencies, should have made 'specific arrangements … for constant
> surveillance of the prisoner,' and that his failure to do so was negligence.

*Logue,* 412 U.S. at 532.   Thus *Logue* demonstrates that the government may be liable for the

negligence of its own employees notwithstanding that a government contractor may also have

been negligent and contributed to the plaintiff's injuries.   Accordingly, even if the government is

correct in its assertion that McLeod was not a government employee, but instead was a

government contractor; such a fact would not excuse the government from liability for the

negligent and wrongful acts of its own employees. *Logue,* 412 U.S. at 532.

Even if this Court were somehow to construe the Complaint as alleging vicarious liability

for the acts of McLeod, dismissal would still be inappropriate.   As noted above, the FTCA's

definition of "employee" makes clear that even private individuals who are not on the

government's payroll may be considered employees for purposes of establishing the

government's liability under the statute. *Patterson & Wilder Constr. Co., Inc.,* 226 F.3d at 1274.

To determine whether an individual is an employee of the government, the Eleventh Circuit in

*Means* adopted the "control test." *Means,* 176 F.3d at 1379. Under this test, a person is an

employee of the government if the government controls and supervises the day-to-day activities of the alleged tortfeasor during the relevant time. *Patterson & Wilder Constr. Co., Inc.,* 226 F.3d at 1274 (citing *Means,* 176 F.3d at 1379 and *Logue,* 412 U.S. at 526-32). Notably, it is not necessary that the government continually control all aspects of the individual's activities, so long as it has the authority to do so given the nature of the task. *Id.* (citing *Means,* 176 F.3d at 1380; *Logue,* 412 U.S. at 527-28 (the "critical factor" is "the authority of the principal to control the detailed physical performance of the" individual); and *B&A Marine Co., Inc. v. American Foreign Shipping Co., Inc.,* 23 F.3d 709, 713 (2d Cir.1994) ("Courts have found it indicative of an agency relationship if the Government enjoys the power to control the detailed physical performance of the contractor, or if the Government in fact supervises the day-to-day operations.")).

The Eleventh Circuit in *Patterson & Wilder Constr. Co., Inc.* made clear that the "control test" requires the totality of the working relationship with respect to the project at hand to be examined; the issue is not determined by labels given to the person performing the work. *Patterson & Wilder Constr. Co., Inc.,* 226 F.3d at 1275-1276. In *Patterson & Wilder Constr. Co., Inc.,* the plaintiff ("P&W") sued under the FTCA for the destruction of a P&W-leased aircraft destroyed during a covert narcotics operation in Columbia. *Id.* at 1270. Federal agents contacted a private pilot, Reynolds, for the purpose of having Reynolds assist the DEA and Customs in an undercover drug interdiction operation. Reynolds executed documents with Customs which identified him as a "confidential source" and set certain guidelines for his conduct, but also indicated he was not a Customs employee. *Id.* at 1270. Agents told Reynolds that the job would require Reynolds to locate a suitable aircraft, fly it to Colombia, purchase drugs in a pre-arranged transaction, and return to the United States. *Id.* at 1270. Later,

Reynolds and another pilot received specific instructions regarding where and when to fly and who to meet. *Id.* at 1271. The government made two payments of $10,000 each to cover rental of the aircraft, operational expenses, insurance and fuel for seven days. *Id.* at 1271. During the operation, Columbian police arrested the undercover pilots and crashed the plane when they attempted to confiscate it. *Id.* at 1272. The government later paid the pilots $270,000 for their services. *Id.*

The district court dismissed the FTCA case finding that the pilots were not government employees because the government did not exercise sufficient supervision and control over the pilots' activities. *Patterson & Wilder Constr. Co., Inc.,* 226 F.3d at 1272. The sole issue on appeal was whether the pilots were "employees" of the government within the meaning of the FTCA. The Eleventh Circuit vacated and remanded, finding that the pilots had "been retained not just to perform a particular task, but to perform it in a particular way at a particular location at a particular time in accordance with the Government's precise instructions" and therefore "were sufficiently under the Government's control to be deemed employees." *Id.* at 1278. The court vacated notwithstanding that the pilots signed documents expressly stating they were not employees of the government, that the government had nothing to do with acquisition of the aircraft for the mission, and that the government in no way supervised the pilots during flight or in Columbia. It was sufficient that the government "dictate[d] the where, why, and how of the informant's mission." *Id.* at 1277.

Just as in *Patterson & Wilder Constr. Co., Inc.,* there is substantial evidence in this case that the government controlled the "where, why, and how" of McLeod's accomplishment of the mission. For example, the government selected the location of McLeod's seminars, the government selected who would attend, the government selected the dates and times for the

8

training, the government dictated the topics McLeod was required to cover during the training, the government required McLeod to provide objectives with performance measures, an agenda, workshop pre-work assignments, and a workshop syllabus in advance of the seminar, and required McLeod to submit workshop evaluation instruments and a summary report.  *See* M. Fowler Decl., **Exhibit 1, Tab A**.  This Court need not consider whether McLeod might qualify as a government employee under the "control test," however, because the instant Complaint does not seek to hold the government liable for the acts of McLeod, but instead seeks to hold the government liable for the negligent and wrongful acts of individuals who are without question its own employees. *Logue,* 412 U.S. at 532.  The contract exception does not apply.

## B. The discretionary function exception does not deprive this Court of subject matter jurisdiction.

The discretionary function exception is found at 28 U.S.C. § 2680(a). This statutory provision precludes government liability for:[3]

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).  The Supreme Court has enunciated a two-part test for determining whether a government employee's action or omission falls within the discretionary function exception. *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991); *Downs v. United States Army Corps of*

---

[3] The plain text of this statutory provision makes  **two**  exceptions to FTCA liability, because the provision is disjunctive. *Kuhlman v. United States,* 822 F.Supp.2d 1255, 1260 (M.D.Fla. 2011). First, it excepts acts or omissions of government employees in the execution of a statute or regulation, so long as due care is exercised. The government has not raised this exception in this case, so it is irrelevant. Second, § 2680(a) excepts the performance or failure to perform discretionary functions or duties by government employees or agencies, whether or not the discretion is abused. The second exception is the discretionary function exception, and is the exception that is relevant in this case.

*Engineers,* 333 Fed.Appx. 403, 407 (11th Cir. 2009); *Autery v. United States*, 992 F.2d 1523, 1526 (11th Cir.1993). First, the court is to consider the nature of the conduct and determine whether it involves "an element of judgment or choice." *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)); *Downs,* 333 Fed.Appx. at 407; *Powers v. United States,* 996 F.2d 1121, 1124 (11th Cir. 1993). Government conduct does not involve an element of judgment or choice, and thus is not discretionary, if "a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'"[4] *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz,* 486 U.S. at 536). If the government conduct at issue does not involve an element of judgment or choice, the discretionary function exception does not apply and the court need not consider the second prong of the *Gaubert* test. *Miles v. Naval Aviation Museum Foundation,* 289 F.3d 715, 722 (11th Cir. 2002).

If the conduct at issue does involve the exercise of judgment or choice, the court must then determine, under the second prong of the *Gaubert* test, whether that judgment or choice is grounded in considerations of public policy. *Gaubert*, 499 U.S. at 322-23. Only then does the discretionary function exception apply. *Id.* The court is not to "focus on the subjective intent of the government employee or inquire whether the employee actually weighed social, economic, and political policy considerations before acting. [Instead, the court is to] 'focus on the nature of the actions taken and on whether they are susceptible to policy analysis.'" *Downs,* 333 Fed.Appx. at 408 (quoting *Ochran v. United States,* 117 F.3d 495, 500 (11th Cir.1997) and *Gaubert*, 499 U.S. at 325). "[I]t is not relevant whether the government employee in fact made a policy judgment...." *Id.* at 408 (quoting *Ochran,* 117 F.3d. at 501). "[T]he burden of production

---

[4] Contractual duties may also form the basis of such a mandatory course of action. *See e.g., Andrews v. United States,* 121 F.3d 1430, 1439 (11th Cir. 1997).

10

of the policy considerations that might influence the challenged conduct [is] on the Government." *Id.* at 408 (quoting *Ochran,* 117 F.3d at 504 n. 4).

Before this Court begins to apply the two-part *Gaubert* test, it "must first determine exactly what the conduct is at issue." *Miles,* 289 F.3d at 721 (quoting *Autery v. United States,* 992 F.2d 1523, 1527 (11th Cir.1993)). This is important in this case because, as was the case in *Miles,* "[t]he parties dispute what government conduct is at issue in Plaintiff[s'] claim[s]." *Miles,* 289 F.3d at 721. The government in this case mischaracterizes Plaintiffs' negligence claims, asserting that "Plaintiffs' allegations are that the government was negligent in engaging McLeod to conduct the retirement seminars and in failing to adequately supervise him during these seminars so as to prevent him from soliciting investors for the Fund." Def. Mem. at 20. What Plaintiffs actually allege regarding the government's negligence is: (1) "agency officials and contracting officers did not conduct thorough or even cursory background checks on McLeod" as required by applicable procurement regulations, Compl. ¶ 152, (2) "senior agency officials" violated applicable ethics laws and regulations by "accepting and/or soliciting gifts and valuable favors from McLeod and FEBG," Compl. ¶ 153, (3) "senior agency officials having a conflict of interest failed to report their financial interests in FEBG as required by federal laws and regulations," Compl. ¶ 154 and (4) agency officials "fail[ed] to insure McLeod and FEBG did not give specific financial investment advice to government employees in connection with agency retirement financial education activities." Compl. ¶ 155.

This Court's task is to consider "[Plaintiffs'] specific allegations of agency wrongdoing," not what the government imagines the allegations to be, under the "applicable regulatory scheme." *Berkovitz*, 486 U.S. at 540. Whether Plaintiffs' specific allegations are sufficient to establish negligence and whether such acts or omissions are the proximate cause of Plaintiffs'

injuries is irrelevant when determining whether the alleged acts or omissions fall within the discretionary function exception. *Ochran v. United States,* 117 F.3d 495, 504 n.5 (11th Cir. 1997); *Downs,* 333 Fed.Appx. at 406-407 (when determining whether the discretionary function exception applies, courts "do not consider the merits of [Plaintiffs'] underlying tort claim.").

> 1. **Agency officials and contracting officers did not conduct thorough or even cursory background checks on McLeod as required by Federal Acquisition Regulations.**

Plaintiffs first allege that agency officials and contracting officers failed to conduct even a cursory investigation of McLeod as required by applicable procurement regulations.  *See e.g.,* Compl. ¶ 152.  The government argues that "determining whether a contractor meets the 'general standards' set forth at 48 C.F.R. § 9.104-1 of possessing 'a satisfactory record of integrity and business ethics,' having 'adequate financial resources,' and having 'necessary … skills,' 48 C.F.R. § 9.104-1, quite clearly calls for the exercise of judgment." Def. Mem. at 21-22.  We agree.  Plaintiffs do not dispute that agency officials and contracting officers had discretion to select McLeod as the best consultant to assist government agencies with retirement financial education activities, and also had discretion to select how best to investigate McLeod  to verify his qualifications as required, but agency officials and contracting officers had no discretion to forego the required investigations altogether.  On this point, the Supreme Court's decision in *Berkovitz* is controlling.

In *Berkovitz*, parents brought suit under the FTCA against the United States after their two-month old son contracted polio from ingesting a polio vaccine, Orimune, manufactured by Lederle Laboratories.  *Berkovitz*, 486 U.S. at 533.  The complaint alleged that the United States was liable under the FTCA because the Division of Biologic Standards ("DBS"), then a part of the National Institutes of Health, had acted wrongfully in licensing Lederle Laboratories to

12

produce the vaccine and because the Bureau of Biologics of the Food and Drug Administration

("FDA") had acted wrongfully in approving release to the public of the particular lot of vaccine

containing Berkovitz's dose.   *Id.*   The Supreme Court considered each of these "specific

allegations of agency wrongdoing" in the context of the applicable regulatory scheme.   *Id.* at

540.  The Supreme Court explained:

> Petitioners' first allegation with regard to the licensing of Orimune is that the DBS
> issued a product license without first receiving data that the manufacturer must
> submit showing how the product, at the various stages of the manufacturing
> process, matched up against regulatory safety standards. The discretionary
> function exception does not bar a cause of action based on this allegation. The
> statute and regulations described above require, as a precondition to licensing,
> that the DBS receive certain test data from the manufacturer relating to the
> product's compliance with regulatory standards. *See* § 351(d), 58 Stat. 702-703, as
> amended, 42 U.S.C. § 262(d) (providing that a license shall issue "only upon a
> showing" by the manufacturer); 42 CFR § 73.3 (Supp.1964); 21 CFR § 601.2
> (1987) (providing that application for license shall be deemed as filed only upon
> receipt of relevant test data). The DBS has no discretion to issue a license without
> first receiving the required test data; to do so would violate a specific statutory
> and regulatory directive. Accordingly, to the extent that petitioners' licensing
> claim is based on a decision of the DBS to issue a license without having received
> the required test data, the discretionary function exception imposes no bar.

*Berkovitz*, 486 U.S. at 543-544.  Thus, while the DBS may have had discretion to interpret test

data when determining whether to issue a license for the drug, the agency had no discretion to

completely forego the procedures required by the applicable statutes and regulations. Unlike the

statutes and regulations that required the DBS to issue a license only after first receiving test data

as required, the regulatory scheme applicable to Berkovitz's second claim regarding the

negligent release of vaccine lots did not require the FDA to examine every vaccine lot and

generally allowed the FDA to determine the appropriate manner in which to regulate the release

of vaccine lots.  *Berkovitz*, 486 U.S. at 546.  Finding these regulations similar to the regulatory

scheme considered in *United States v. Varig Airlines*, 467 U.S. 797 (1984), the court stated that

"the discretionary function exception bars any claims that challenge the [FDA's] formulation of

policy as to the appropriate way in which to regulate the release of vaccine lots."[5] *Berkovitz*, 486 U.S. at 546.

The cases of *Appley Brothers v. United States,* 164 F.3d 1164 (8th Cir. 1999) and *Audio Odyssey, Ltd., v. United States,* 255 F.3d 512 (8th Cir. 2001) are instructive.  In *Appley Brothers,* the Eighth Circuit found that a section of the U.S.D.A.'s Grain Warehouse Examiner's Handbook required the examiner to, at a very minimum; investigate the whereabouts of out-of-condition corn and to report on the quantities and locations of out-of-condition commodities. *Appley Brothers,* 164 F.3d at 1172.  Rejecting the government's argument that the claim was barred by the discretionary function exception to the FTCA, the Eighth Circuit reasoned:

> Had [the inspector] conducted any investigation about the disposition of the previously reported deteriorating corn, the discretionary exception would likely protect [the inspector's] decisions in conducting that investigation. Here, however, [the inspector] conducted no investigation at all. The district court specifically stated: Since [the inspector] did not check or inquire to see if any corn from XX remained in the elevator or storage facilities he, of course, did nothing to see if the out-of-condition corn had been reconditioned, or if it had deteriorated further.

 *Appley Brothers,* 164 F.3d at 1172.  Distinguishing the case from *Varig Airlines,* the court explained that "although the inspector had discretion in selecting how he would investigate the status of previously reported out-of-condition grain, he had no discretion not to undertake some investigation."  *Id.*  The court rejected the government's additional argument that the handbook was insufficient because it did not "clearly and specifically define what [the inspector] was supposed to do."  *Id.*  It was immaterial that the handbook did not spell out how the investigation

---

[5] Nevertheless, the *Berkovitz* Court held it was error to have dismissed the plaintiff's claims regarding the negligent release of the vaccine lot under the discretionary function exception because plaintiff had alleged that the agency also had adopted a policy of testing all vaccine lots for safety compliance. *Berkovitz*, 486 U.S. at 547.  "Because petitioners may yet show, on the basis of materials obtained in discovery or otherwise, that the conduct challenged here did not involve the permissible exercise of policy discretion, the invocation of the discretionary function exception to dismiss petitioners' lot release claim was improper."  *Id.* at 547-548.

was to be accomplished, that it required an investigation and none was performed was enough to defeat the discretionary function bar.

In *Audio Odyssey,* a similar situation was presented.  In this case, the Small Business Administration ("SBA") failed to adhere to its own regulations which prescribed a mandatory course of action to follow prior to proceeding with bank loans in liquidation.  *Audio Odyssey,* 255 F.3d at 518-519.  While the court agreed that the ultimate decision to place a loan in liquidation is discretionary, *Id.* at 517, the SBA did not have discretion to forego the mandated procedures entirely. *Id.* at 519.  "The SBA may have had some discretion in how they executed the mandatory requirements of the SOP, but they did not have the discretion to eliminate those steps in the liquidation process entirely. To the extent Audio Odyssey is alleging that the SBA was negligent for a complete failure to undertake certain mandatory procedures, the discretionary function exception does not apply and the district court has jurisdiction to address those claims." *Audio Odyssey,* 255 F.3d at 519.  In contrast, the court held the SBA was "protected by the discretionary function exception,… to the extent Audio Odyssey alleges the SBA was negligent in **the way it executed** these mandatory procedures."  *Id.* (emphasis added); *See also Fleming v. United States,* 69 F.Supp.2d 837, 840-841 (W.D.Va. 1999)(where agency failed to adhere to its own guidelines, as stated in agency handbooks and manuals, by failing to conduct mandated investigations, the discretionary function exception did not apply).

While Plaintiffs agree that the government has broad discretion under the Federal Acquisition Regulations ("FARs"), the regulatory scheme requires, at a minimum, that contracting officers and agency officials engage in **some** investigation of prospective contractors. Because the Complaint alleges the government did not perform any investigation of McLeod, the discretionary function exception offers no protection.   48 C.F.R. § 9.103, titled "Policy,"

provides that "[p]urchases **shall** be made from, and contracts **shall** be awarded to, responsible prospective contractors **only**."  48 C.F.R. § 9.103(a)(emphasis added).  To that end, 48 C.F.R. § 9.103(b) provides that, "No purchase or award shall be made unless the contracting officer **makes an affirmative determination of responsibility**."[6] (emphasis supplied). The specific requirements that must be met, and considered by the contracting agent, are set forth in 48 C.F.R. § 9.104-1.  These requirements include the contractor having, among other qualifications, "a satisfactory record of integrity and business ethics."  48 C.F.R. § 9.104-1(d).  The FARs also set forth the specific procedures the contracting agent must follow when making a determination of responsibility.

"Before making a determination of responsibility, the contracting officer **shall** possess or obtain information sufficient to be satisfied that the prospective contractor currently meets the applicable standards in 9.104."  48 C.F.R. § 9.105-1(a) (emphasis added).  Thus, just as the DBS lacked discretion to issue a drug license without first obtaining certain information from the drug's manufacturer sufficient to demonstrate the drug's compliance with regulatory standards, *Berkovitz,* 486 U.S. at 543-544, so too did the contracting and purchasing officers here lack discretion to make an affirmative determination of McLeod's responsibility without first obtaining information sufficient to demonstrate the contractor's satisfaction of regulatory requirements.  The FARs direct that in making a determination of responsibility, contracting agents must consider certain information in various government databases and provides officers should also consider other identified sources of information when investigating prospective contractors, including "records and experience data," "bid proposal information," and "[o]ther sources such as publications; suppliers, subcontractors, and customers of the prospective

---

[6] The regulation's reference to "purchases" or "awards" indicates the FARs apply to purchases made with or without formal contract awards.

contractor; financial institutions; Government agencies; and business and trade associations." 48 C.F.R. § 9.105-1(c).   While contracting agents may have discretion under this regulatory scheme to determine how they will investigate a prospective contractor and whether the information they have obtained is sufficient to make an affirmative determination of responsibility, contracting agents do not have the choice not to investigate at all, as Plaintiffs allege here.   *Berkovitz,* 486 U.S. at 543-544 is directly on point.

The government's argument that "at least two courts have held the very regulations cited here by Plaintiffs are not mandatory and specific regulations that defeat application of the discretionary function exception," Def. Mem. at 22, must be rejected.   The government relies first on *Wood v. United States,* 290 F.3d 29 (1st Cir. 2002).   In *Wood*, the injured plaintiff alleged the Navy was negligent in its selection of the contractor he worked for, ASI, when he was injured. *Wood,* 290 F.3d at 33.   After describing the FARs as "a set of rules and regulations, … that broadly outline procurement policies and procedures for the acquisition of goods and services by the government," the court stated:

> Congress provided guiding principles concerning the retention of contractors like ASI by the Navy. [48 C.F.R.] §§ 9.104-1, 9.104-3. Pursuant to both the statute and the FAR, some of the factors to be considered include whether the prospective contractor has adequate financial resources; the ability to comply with delivery and performance schedule; a satisfactory performance record; and a satisfactory record of integrity and business ethics. 41 U.S.C. § 403(7)(Supp.2001); 48 C.F.R. § 9.104-1(a)-(d).

*Wood,* 290 F.3d at 34.   "Thus," the court concluded, "the Navy was to consider a variety of factors-safety programs among them-when it evaluated bids and selected a contractor."   *Id.*   The plaintiff argued that the Navy was negligent in its investigation of ASI because it "misread ASI's so called experience modification rating ("EMR"), causing it to select" an unsafe contractor. *Wood,* 290 F.3d at 36.   The court rejected this argument, stating:

> Wood points to no express requirement, to which the Navy was subject, mandating an assessment, whether or not accurate, of a contractor's EMR, or establishing a particular EMR benchmark as a precondition to selection. Nor was there an express requirement that the government disregard or disqualify a contractor based on a contractor's past failure to maintain some particular level of safety compliance on other jobs. In the absence of a particular criterion that the government failed to meet, **or a mandated duty it failed to perform**, the conduct of a government employee must be deemed discretionary.

*Wood,* 290 F.3d at 37 (emphasis added).  Thus, the plaintiff in *Wood* was unhappy with the way in which the Navy performed its investigation of ASI under the FARs, he did not allege the Navy conducted no investigation at all.  Contrary to the government's argument, the *Wood* court did not hold that the Navy had discretion to ignore the FARs completely.  Unlike *Berkovitz, Appley Brothers, Audio Odyssey,* and *Fleming,* the Navy performed at least some minimal investigation of ASI.  *Wood* therefore is readily distinguishable from this case.  Here, Plaintiffs allege the government failed to conduct even a cursory investigation of McLeod and thereby failed to perform a mandated duty.

The government's reliance on *Goewey v. United States,* 886 F.Supp. 1268 (D.S.C. 1995), is likewise unavailing.  Def. Mem. at 22.  In *Goewey* the plaintiff challenged the Navy's ultimate decision to delegate maintenance responsibilities to a contractor, but made no argument that the Navy failed to conduct any assessment of the contractor before making such delegation. *Goewey,* 886 F.Supp. at 1277.  The court noted in passing that the FARs "impart to the USA discretion to exercise judgment in the choice of maintenance contractors."  *Id.* at 1278.  While this is certainly true, the FARs do require that agencies engage in some assessment of potential contractors and make "an affirmative determination of responsibility" based upon sufficient information first obtained.  Agencies are free to choose their contractors, but have no discretion to ignore the FARs vetting requirements completely. *Berkovitz,* 486 U.S. at 543-543; *Appley Brothers,* 164 F.3d at 1172; *Audio Odyssey,* 255 F.3d at 518-519; and *Fleming,* 69 F.Supp.2d at 840-841.

**2.    Senior agency officials violated applicable ethics laws and regulations by accepting and/or soliciting gifts and valuable favors from McLeod and FEBG and by failing to report their financial interests in FEBG.**

As stated *supra,* it is important that this Court "first determine exactly what the conduct is at issue" when considering the discretionary function exception under the FTCA. *Miles,* 289 F.3d at 721 (quoting *Autery v. United States,* 992 F.2d 1523, 1527 (11th Cir.1993)).  The government argues that "general ethics guidelines do not prescribe a specific and mandatory course of action embodying a fixed or readily ascertainable standard for selecting someone to provide financial education services to Federal employees."  Def. Mem. at 23.  The Complaint, however, does not contain such an allegation.  Rather, the Complaint alleges senior agency officials wrongfully violated applicable ethics laws and regulations by accepting and/or soliciting gifts and valuable favors from McLeod and FEBG and by failing to report their financial interests in FEBG. *See e.g.,* Compl. ¶¶ 153, 154.  In addition to wrongfully violating ethics regulations, the Complaint alleges further that "the acceptance of valuable gifts and favors violated one or more criminal statutes addressing conflicts of interest, including 18 U.S.C. §§ 201, 203 and 208."  Compl. ¶ 141.

The discretionary function exception does not protect the unauthorized acts of government agents. *See Berkovitz*, 486 U.S. at 539 ("The discretionary function exception applies only to conduct that involves the **permissible** exercise of policy judgment.") (emphasis added); *Castro v. United States,* 608 F.3d 266, 271 (5th Cir. 2010)(quoting *Truman v. United States*, 26 F.3d 592, 594 (5th Cir.1994) ("Through the enactment of the FTCA, the government has generally waived its sovereign immunity from tort liability for the negligent or wrongful acts or omissions of its agents who act within the scope of their employment."). "[C]ourts have read the Supreme Court's discretionary function cases as denying protection to actions that are unauthorized because they are unconstitutional, proscribed by statute, or exceed the scope of an

19

official's authority." *Thames Shipyard & Repair Co. v. United States*, 350 F.3d 247, 254 (1st Cir. 2003)(internal citations omitted).

This safeguard inherent in the discretionary function exception has been recognized by every Circuit Court to have considered the issue, including the Eleventh Circuit.  *See e.g., Denson v. United States,* 574 F.3d 1318, 1336-1337 (11th Cir. 2009)("because federal officials lack discretion to violate constitutional rights [or federal statutes or binding regulations, the discretionary function] defense would [not] be available." (citing *Medina* and *Red Lake Band of Chippewa Indians* cases *infra*); *Sutton v. United States*, 819 F.2d 1289, 1293 (5th Cir.1987) (concluding that action by a government agent "does not fall within the discretionary function exception of § 2680(a) when governmental agents exceed the scope of their authority as designated by statute or the Constitution."); *Limone v. United States*, 579 F.3d 79, 101 (1st Cir. 2009) ("It is elementary that the discretionary function exception does not immunize the government from liability for actions proscribed by federal statute or regulation. Nor does it shield conduct that transgresses the Constitution.")(internal citations omitted); *Raz v. United States*, 343 F.3d 945, 948 (8th Cir. 2003) ("We must also conclude that the FBI's alleged surveillance activities fall outside the FTCA's discretionary function exception because [plaintiff] alleged they were conducted in violation of his First and Fourth Amendment rights."); *Medina v. United States*, 259 F.3d 220, 225 (4th Cir. 2001) (noting that the starting point of the discretionary function exception analysis is that "federal officials do not possess discretion to violate constitutional rights or federal statutes") (quoting *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir.1988)); *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000) ("governmental conduct cannot be discretionary if it violates a legal mandate"); *Prisco v. Talty*, 993 F.2d 21, 26 n. 14 (3d Cir.1993) (concluding that the discretionary function exception was

inapplicable to an FTCA claim based on conduct that violated plaintiff's constitutional rights); *Red Lake Band of Chippewa Indians v. United States*, 800 F.2d 1187, 1196 (D.C.Cir.1986) ("An employee of the government acting beyond his authority is not exercising the sort of discretion the discretionary function exception was enacted to protect."); *Davis v. United States,* 340 F.Supp.2d 79, 93 (D. Mass. 2004)("Where a party has pleaded that the government employee's conduct was 'unconstitutional, proscribed by statute, or exceed[ed] the scope of [the agent's] authority,' the conduct does not fit within the discretionary function exception.").

The senior agency officials who accepted and/or solicited valuable gifts from McLeod did not have discretion to violate the law.  Whether these wrongful acts are the proximate cause of Plaintiffs' injuries is irrelevant when determining whether the alleged wrongful acts fall within the discretionary function exception. *Ochran,* 117 F.3d. at 504 n.5; *Downs,* 333 Fed.Appx. at 406-407.  The government's suggestion that the wrongful conduct alleged in the instant case "is virtually identical" to that alleged in *Baer v. United States,* 2011 WL 6131789 (D.N.J. 2011)(unpublished), Def. Mem. at 23, is wrong.

There were no allegations in *Baer* that government officials violated binding regulations at 5 C.F.R. § 2635.101(b)(4),[7] or criminal statutes at 18 U.S.C. §§ 201, 203 and/or 208, as in this case.  In *Baer,* victims of the Bernard Madoff Ponzi Scheme sued the SEC claiming the SEC was negligent in its investigation of Madoff, in part, because the government failed to discover the fraud earlier and because the SEC allegedly acted contrary to 5 C.F.R. § 2635.101(b)(8) and other regulations (not cited in this case) which, according to the plaintiffs in *Baer*, required impartial treatment in SEC investigations.  *Baer,* 2011 WL 6131789 at *4.  The regulations cited

---

[7] The Complaint contains typographical errors.  5 C.F.R. § 2635.101(b)(4) is incorrectly citied as 5 C.F.R. § 2**36**5.101(b)(4) in Paragraph 137, and 5 C.F.R. § 2635.101(b)(8) is incorrectly cited as 5 C.F.R. § 2**36**5.101(b)(8) in Paragraph 140.

by plaintiffs in *Baer* were not criminal statutes and did not specifically prescribe how the SEC must investigate or prosecute securities violations.  The court concluded that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."  *Id.* at *6.  Plaintiffs in this case have made no allegations of negligence or misconduct in connection with the government's investigation of McLeod or FEBG.  In short, none of the allegations in *Baer* remotely resemble the allegations made in this case.

The government's reliance on *Robert Juan Dartez, LLC v. United States,* 824 F.Supp.2d 743 (N.D.Tex. 2011), Def. Mem. at 24, is likewise misplaced.  In *Robert Juan Dartez*, the court described the plaintiffs' allegation as: "[d]istilled to its essence, Plaintiffs complain that the SEC failed to initiate an investigation of the Stanford Defendant's [Ponzi] scheme at the time and in the manner preferred by the Plaintiffs." *Robert Juan Dartez,* 824 F.Supp.2d at 748.  The complaint made "clear that the Plaintiffs' attribute[d] their damages specifically to SEC inaction where the Plaintiffs would have preferred otherwise." *Id.*  Although the plaintiffs alleged the former SEC regional enforcement director labored under an ethical conflict of interest, the court held the discretionary function bar applied because the "refusal to prosecute is a classic illustration of a decision committed to agency discretion." *Id.* at 749.  Again, Plaintiffs in this case have made no allegations of negligence or misconduct in connection with the government's investigation of McLeod or FEBG.  Like *Baer*, *Robert Juan Dartez* is inapposite to this case.  Contrary to the government's argument, the Plaintiffs in this case allege specific regulatory and criminal violations. Government employees simply do not have discretion to violate the law. *Denson,* 574 F.3d at 1336-1337 (citing *Medina*, 259 F.3d at 225 ("federal officials do not possess discretion to violate constitutional rights or federal statutes")).

    **3.**    **Agency officials failed to ensure McLeod and FEBG did not give specific financial investment advice to government employees in connection with agency retirement financial education activities.**

The Office of Personnel Management ("OPM") has responsibility for "developing Government-wide training policy, coordinating and managing training policy programs, and providing technical assistance to Federal agencies." *See* Executive Order 13111.  Congress has charged the OPM with responsibility to "develop and implement a retirement financial literacy and education strategy" for federal agencies as part of the retirement training offered by OPM as required under 5 U.S.C. § 8350.  *See* 5 U.S.C. § 8350 note.  The mandated retirement strategy is Exhibit 2 to the Complaint.  Federal agencies are required to follow the OPM's regulations.

Pursuant to 5 U.S.C. § 4103(a)(1), "the head of each agency, … shall establish, operate, maintain, and evaluate a program or programs, and a plan or plans thereunder, for the training of employees in or under the agency by, in, and through Government facilities and non-Government facilities.  Each program, and plan thereunder, shall conform to the principles, standards, and related requirements contained in the regulations prescribed [by OPM] under section 4118 of [Title 5]." *Id., see also* 5 C.F.R. § Part 410.  5 U.S.C. § 4118(a) provides that the OPM "shall prescribe regulations containing the principles, standards, and related requirements for the programs, and plans thereunder, for the training of employees under this chapter, …" OPM's regulations must cover, among other things, "the scope and conduct of the agency training programs and plans."  5 U.S.C. § 4118(a)(2).  Although these statutes clearly require each agency to adhere to the "principles, standards, and related requirements" prescribed by OPM when establishing, operating and maintaining their training programs, including their retirement training programs, the OPM does not have the authority to prescribe the "types and methods" of training or to regulate "the details" of agency training programs.  5 U.S.C. §

4118(c).  Accordingly, agencies have discretion regarding how to comply with the principles, standards, and related requirements prescribed by OPM, but they have no discretion to ignore or act contrary to OPM's directives.

The government argues that because OPM prescribes only the principles, standards, and related requirements agencies must adhere to, but does not regulate "the details" or "types and methods" of agency training programs, "the OPM Retirement Strategy cannot constitute a binding mandatory directive."  Def. Mem. at 25 (citing 5 U.S.C. § 4118(c)).   This, of course, is not the law.  The Eleventh Circuit stated in *Downs* that "a provision may leave room for the exercise of 'choice or judgment' in the discharge of duties but not fall within the discretionary function exception."  *Downs,* 333 Fed.Appx. at 409 (quoting *Ochran,* 117 F.3d. at 501).  Stated another way, "If the standard … is clear, the government official may maintain discretion over how to meet that standard, without retaining discretion over whether or not to do so."  *Downs,* 333 Fed.Appx. at 409.

 The directive required by OPM is clear: "Each agency must develop a retirement financial education plan based on the educational model in this strategy.  Agencies must insure[8] that their financial education activities are informational and educational in nature and that they do not provide specific financial investment advice."   *See* Compl. Ex. 2 at 11.  Agencies may retain discretion over the specific manner in which their retirement financial education is conducted and how to ensure their financial education activities do not provide specific financial investment advice, but they do not retain discretion over whether or not to provide specific financial investment advice in connection with their financial education activities.  *Downs,* 333 Fed.Appx. at 409.  This they are prohibited from doing.  This point demonstrates that the

---

[8] So in original. Probably should be "ensure."

government's suggestion that the discretionary exception should apply because the OPM Retirement Strategy "does not prescribe the specific manner in which such financial education activities are to be conducted or the specific content that may or may not be included in such activities," Def. Mem. at 26, misses the mark.  The government cannot, consistent with the language of the OPM Retirement Strategy, legitimately say that an agency retains discretion to provide specific financial investment advice during financial education activities.

The Supreme Court in *Gaubert* reaffirmed that the "requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive."  *Gaubert,* 499 U.S. at 322 (quoting *Berkovitz,* 486 U.S. at 536).  Governmental "policy" may be "expressed or implied by statute, regulation, or agency guidelines." *Gaubert,* 499 U.S. at 324.  When determining whether an agency guideline specifically prescribes a course of action under *Gaubert*, the focus is not on the type of agency guideline under consideration (*i.e.,* agency manual, handbook, or guideline) but rather on whether the language embodies "a fixed or readily ascertainable standard." *Cranford v. United States,* 466 F.3d 955, 958 (11th Cir. 2006)(citing *Hughes v. United States,* 110 F.3d 765, 768 (11th Cir. 1997)).  *See also Downs v. United States Army Corps of Engineers,* 2013 WL 1715346 (11th Cir. April 19, 2013)(affirming district court's holding that requirement to use "non-rocky material similar to that of existing beach" provided a fixed or readily ascertainable standard sufficient to defeat the discretionary function exception).  The government cites *Bowman v. United States,* 848 F.Supp. 979 (M.D. Fla. 1994), and argues the OPM Retirement Strategy "cannot be the source of [a] mandatory directive." Def. Mem. at 26.  *Bowman,* however, actually supports Plaintiffs' position.

In *Bowman,* this Court did not find language in the Navy's Refuse Disposal Manual which indicated the Navy was required to follow the manual, and therefore distinguished the Navy's manual from another manual applicable to the Army: "Unlike the War Dept. Manual, which states that it 'outlines procedures to be followed....,' War Dept. Manual at 1, the [Navy's] Refuse Disposal Manual is not a mandatory regulation." *Bowman,* 848 F.Supp. at 984.  Here, the OPM Retirement Strategy is more like the War Dept. Manual in *Bowman* because it states federal agencies "must develop a retirement financial education plan based on the educational model in [the] strategy" and "must [e]nsure that their financial education activities … do not provide specific financial investment advice."

The government next makes the sweeping and false claim that "the Eleventh Circuit has held that any statute, regulation, or agency policy stating that an agency is to 'ensure' that a contractor performs a task in a certain way or to 'ensure' that the contractor does not engage in some unauthorized conduct do not constitute mandatory directives for purposes of the discretionary function exception."  Def. Mem. at 27.  In support of this incorrect statement, the government cites *Andrews v. United States,* 121 F.3d 1430, 1439 (11th Cir. 1997), and states that the "Eleventh Circuit overturned the district court's holding that the discretionary function exception did not apply on the grounds that the contracts imposed a 'mandatory duty' on the navy 'to ensure that unauthorized materials were not placed in the dumpsters' and to 'ensure that [the contractor] complies with the terms of the contract.'"  Def. Mem. at 27.  The government has misconstrued the Eleventh Circuit's holding in *Andrews.*

The Eleventh Circuit detailed the district court's **pretrial order** in *Andrews* as follows:

> The district court concluded that the contracts between the Navy and Waste Control [the contractor] imposed an implicit mandatory duty upon the Navy "to **ensure** that unauthorized materials were not placed in the dumpsters by segregating its waste." Although the contracts did not set forth this obligation

> expressly, "[c]ommon sense dictates that if parties to a contract agree that only
> certain materials may be disposed of in dumpsters, the party disposing of the
> materials has the obligation to ensure that it complies with the terms of the
> contract."  The district court then found that undisputed evidence showed the
> Navy violated its mandatory duty to segregate flammable waste. Accordingly, the
> court ruled that the discretionary function exception did not bar plaintiffs' FTCA
> claims.

*Andrews,* 121 F.3d at 1439 (internal citations omitted)(emphasis supplied).  Significantly, the

Eleventh Circuit stated on appeal that, "We agree with the reasoning in the district court's

**pretrial order**. As discussed *infra*, we conclude, as did the district court, that the discretionary

function exception does not apply to the Navy's failure to segregate flammable wastes."  *Id.* at

1439 n.5 (emphasis added).  This portion of the *Andrews* decision demonstrates the fallacious

nature of the government's argument.

By agreeing with the district court's pre-trial order, the Eleventh Circuit agreed that the

discretionary function exception did not save the Navy from liability for failing to **ensure** its

contractor did not place unauthorized materials in the dumpsters.  The reason the judgment

against the government was not sustained on appeal under this reasoning is **not** because the

Eleventh Circuit reversed the district court's holding on the inapplicability of the discretionary

function exception, as the government represents, but rather was because the evidence at trial

demonstrated that the Navy's failure to "ensure that unauthorized materials were not placed in

the dumpsters" was not the proximate cause of the plaintiffs' injuries. *Andrews,* 121 F.3d at 1439

n.5, 1441 ("The evidence presented at trial … showed that there was no causal link between the

Navy's failure to segregate and the contamination of plaintiffs' wells.")("Put another way, the

Navy's failure to separate flammable waste from other waste … did not cause the contamination

of plaintiff's wells.").  The Eleventh Circuit's reversal in *Andrews* was based on a completely

different ruling made by the district court after trial. That ruling was that the discretionary

function exception did not apply because "the Navy [had] violated a nondelegable—and therefore non-discretionary—federal duty to dispose safely of its hazardous waste," a duty distinct from the Navy's duty considered in the district court's pre-trial order, that is, to ensure its contractors did not place unauthorized materials in the dumpsters. *Andrews,* 121 F.3d at 1439 (distinguishing *Dickerson, Inc. v. United States,* 875 F.2d 1577 (11th Cir. 1989)).

The government's assertion that the law in this Circuit is that "any" requirement "to 'ensure' that a contractor performs a task in a certain way or to 'ensure' that the contractor does not engage in some unauthorized conduct do not constitute mandatory directives for purposes of the discretionary function exception,"  Def. Mem. at 27, is incorrect.  The Eleventh Circuit's decision in *Downs* further demonstrates the government's assertion is wrong.  In *Downs,* plaintiff Downs sued under the FTCA, asserting that "the United States Army Corps of Engineers ("Corps") negligently undertook its duty to **ensure** the quality of fill material used in the Miami Beach re-nourishment project in the 1970s and 1980s and negligently failed to warn about known potential dangers that resulted from its actions, thereby proximately causing Downs's injuries when he dove into the Miami Beach surf and struck his head on a 'basketball-sized' rock, rendering him a quadriplegic." *Downs,* 333 Fed.Appx. at 404 (emphasis added).

The area of the beach where Downs was injured was part of a restoration project authorized by Congress and executed by the Corps through a Local Cooperation Agreement ("LCA") with Dade County, Florida.  The LCA required the Corps to **ensure** the use of "only suitable material" for project beach fill, "defined as non-rocky, sandy material similar to that of the existing beach."  *Downs,* 333 Fed.Appx. at 405.  The Corps contracted with private contractors to complete the work, including Construction Aggregates Corporation ("CAC").  *Id.* Downs alleged the Corps negligently failed to ensure CAC used the proper fill, causing his

injuries.  The district court, ruling Down's claims were barred by the discretionary function exception, found "that the duty at issue in this case—to ensure that the fill material used was made of 'suitable material being defined as non-rocky, sandy material similar to that of the existing beach'—was 'an impossible goal' that made an interpretation of the agreement to mean the Corps was required 'to ensure the absence of all rocks' 'absurd' and that, as a 'one-line prohibition ... contradicted by numerous other documents in a complex governmental project,' it '[did] not prescribe a fixed and ascertainable standard' sufficient to 'deprive the government of discretion in dealing with the rock problem.'" *Downs,* 333 Fed.Appx. at 406.  The district court reached this conclusion despite having recognized that the LCA contained "straightforward language requiring that the government only use non-rocky materials. To the extent the government did in fact permit the inclusion of rocks within the fill, it ran afoul of this mandatory language." *Id.* at 410.

The Eleventh Circuit rejected the district court's conclusion that "because 'the contract does not specifically prescribe a method for ensuring the absence of rocks in the fill,' it fails to meet the specificity requirement for liability under the FTCA."  *Downs,* 333 Fed.Appx. at 413 n.5.  In reversing and remanding the case, the Eleventh Circuit explained:

> A defined safety or other construction standard can create a mandatory duty to meet that standard, by whatever means. This reasoning is consistent with our decision in *Ochran*, cited above, wherein we said that a government policy to provide information to witnesses and victims created a sufficiently mandatory duty to establish liability under the FTCA even though when and how to provide that information was left to government employee discretion. *Ochran,* 117 F.3d at 500, 504. Similarly, in *ARA Leisure Services v. United States*, 831 F.2d 193 (9th Cir. 1987), the Ninth Circuit held that a National Park Service standard that required that park roads "conform to the original grades and alignments" and be "firm, [and] of uniform cross section" was sufficiently specific to create a mandatory duty, even without delineating the means by which the roads were to be maintained. *ARA Leisure Serv[ices]*, 831 F.2d at 195.

*Downs,* 333 Fed.Appx. at 413 n.5. Here, as in *Downs,* the OPM Retirement Strategy contains "straightforward language" requiring the government to ensure its retirement financial education activities do not provide specific financial investment advice. The government's use of McLeod to perform the work is not materially different from the government's use of CAC to perform the work in *Downs. See also Phillips v. United States,* 956 F.2d 1071 (11th Cir. 1992)(affirming district court's determination that the discretionary function exception did not apply because the FARs required the Army Corps to ensure that the means of anchorage of suspended scaffolds was inspected, and that the Army Corps failed to inspect and correct safety violations notwithstanding delegation to contractors).

> **4.   None of the acts complained of involve the permissible exercise of policy discretion.**

Because none of the acts or omissions complained of involves any element of judgment or choice, this Court need not consider the second prong of the *Gaubert* test. *Miles,* 289 F.3d at 722. Even if this Court were to find some element of judgment or choice in the challenged conduct, the discretionary function exception still will not apply under the second prong of *Gaubert* "if **the acts complained of** do not involve the **permissible** exercise of policy discretion." *Berkovitz,* 486 U.S. at 537, 546 (emphasis added); *Gaubert*, 499 U.S. at 323. In articulating this standard, the Supreme Court specifically rejected the government's position, repeated here, that the discretionary function exception should preclude liability for any and all acts arising out of the regulatory programs of federal agencies. *Berkovitz,* 486 U.S. at 538. If the applicable statute, regulation, or policy "leaves no room for an official to exercise policy judgment in performing a given act, or if the act simply does not involve the exercise of such judgment, the discretionary function exception does not bar a claim that the act was negligent or wrongful." *Berkovitz,* 486 U.S. at 546-547.

As set forth in detail above, the FARs did not permit agency employees to exercise policy discretion when determining whether or not to investigate McLeod as a potential contractor.  At minimum, some investigation was required.   While agency employees would be exercising policy judgments in the execution of such an investigation, "[w]hen a suit charges an agency with failing to act in accord with a specific mandatory directive, the discretionary function exception does not apply."  *Berkovitz,* 486 U.S. at 544.   Likewise, agency employees who showed favor to McLeod as a result of their solicitation and/or acceptance of valuable gifts from McLeod in violation of regulations and criminal statutes prohibiting such conduct cannot have been engaged in the "permissible" exercise of policy judgment.   *Berkovitz,* 486 U.S. at 537; *Denson,* 574 F.3d at 1336-1337 (federal officials have no discretion to violate the law).   Finally, we agree with the government, Def. Mem. at 29, that federal agencies are exercising policy discretion when determining how to accomplish retirement financial education in accordance with Congressional and OPM directives, however, OPM policy does not permit an agency to provide specific financial investment advice in connection with the agency's financial education activities.  The agency's failure to act "in accord with [this] specific mandatory directive" simply does not involve the exercise of any policy discretion. *Berkovitz,* 486 U.S. at 544-546.  The OPM Retirement Strategy clearly lists the duty to ensure no specific financial investment advice is given separately from, not merely as part of, the general duty to provide retirement financial education to agency employees.   "That the later duty involves the consideration of public policy matters has no bearing on whether the former also involves the same considerations." *Ochran*, 117 F.3d at 504 (citing *Berkovitz,* 486 U.S. at 542-545)("analyzing each provision of the relevant regulations as the source of a separate government duty.")).

The government bears the burden of identifying policy considerations that might influence the specific conduct complained of in the Complaint *Ochran*, 117 F.3d at 504 n.4. The government has failed to meet this burden. The government points to no policy considerations which would permit government employees to exercise discretion to forgo required investigations, to solicit and accept valuable gifts in violation of regulatory prohibitions and criminal laws, or to fail in their duty to ensure specific financial investment advice is not provided in connection with agency retirement financial education activities. In sum, the discretionary function exception does not apply.

### C. The misrepresentation exception does not deprive this court of subject matter jurisdiction.

Two Supreme Court cases guide the proper application of the misrepresentation exception to FTCA jurisdiction found at 28 U.S.C. § 2680(h). In *United States v. Neustadt*, 366 U.S. 696, 698–99 (1961), plaintiffs bought a home which had been inspected by an appraiser for the Federal Housing Administration ("FHA"). The inspector found no defects which would have disqualified the property for mortgage insurance. *Id*. at 698. After the plaintiffs moved in the house, they found numerous defects, and sued the FHA. *Id*. at 700. The Court concluded that the claim was barred by the misrepresentation exception, reasoning that action for breach of "the duty to use due care in obtaining and communicating information upon which [a] party may reasonably be expected to rely in the conduct of his economic affairs" was within the commonly understood legal definition of misrepresentation. *Id*. at 706.

The Supreme Court clarified the distinction between an action based on misrepresentation and an action based on an independent tort in *Block v. Neal*, 460 U.S. 289 (1983). In *Block*, plaintiff applied for a Rural Housing Loan from the Farmers Home Administration ("FmHA"). *Id*. at 291. After the loan was approved, plaintiff contracted with a

builder to construct a house. *Id.* The contract required the builder's work to conform to plans approved by the FmHA, and granted FmHA the right to inspect and to reject any non-complying work or materials. *Id.* An FmHA official inspected the house and found no defects. *Id.* at 292. After the plaintiff moved in and found numerous defects, she sued the agency. *Id.* The Court rejected the argument that the case was controlled by *Neustadt*:

> [T]he essence of an action for misrepresentation ... is the communication of misinformation on which the recipient relies. The gravamen of the action against the Government in *Neustadt* was that the plaintiff was misled by a "Statement of Appraisal" prepared by the Government. Neustadt alleged no injury that he would have suffered independently of his reliance on the erroneous appraisal.

*Block,* 460 U.S. at 296.

The Court contrasted *Neustadt* to the facts before it, and reasoned that plaintiff had stated a viable cause of action under Restatement (Second) of Torts § 323 (1965)—the Good Samaritan doctrine. *Id.* at 297. The Court distinguished the FmHA's duty to use due care to ensure that the builder followed previously approved plans and cure all defects before completing construction from the FmHA's duty to use due care in communicating information to the plaintiff. *Id.* at 297–298 (the misrepresentation exception "does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty."). The Court emphasized that even though there may not be a cause of action for negligent misrepresentation, a claim could still lie for damages caused by other aspects of the government's conduct which might "overlap" with a negligent misrepresentation claim. *Id.* at 298. The Court explained:

> Of course, in the absence of the "misrepresentation" exception to the Tort Claims Act, respondent could also have brought a claim for negligent misrepresentation to recover for any injury caused by her misplaced reliance on advice provided by FmHA officials and on the FmHA inspection reports. Common to both the misrepresentation and the negligence claim would be certain factual and legal questions, such as whether FmHA officials used due care in inspecting Neal's

> home while it was under construction. But the partial overlap between these two tort actions does not support the conclusion that if one is excepted under the Tort Claims Act, the other must be as well. Neither the language nor history of the Act suggest that when one aspect of the Government's conduct is not actionable under the "misrepresentation" exception, a claimant is barred from pursuing a distinct claim arising out of other aspects of the Government's conduct.

*Block,* 460 U.S. at 298.  The Court concluded the misrepresentation exception did not apply "because Neal does not seek to recover on the basis of misstatements made by FmHA officials." *Id.* at 299.  "Although FmHA … may have undertaken both to supervise construction of Neal's house and to provide Neal information regarding the progress of construction, Neal's action is based solely on the former conduct." *Id.*

In cases decided after *Block,* courts in the Eleventh Circuit and elsewhere look to whether the focal point of the plaintiff's claim is (1) negligence in the communication of (or failure to communicate) information or (2) negligence in the performance of an operational task, with misrepresentation being merely collateral to such performance.  *See e.g., Delvin v. United States,* 352 F.3d 525, 543 (2d Cir. 2003); *Metropolitan Life Ins. Co. v. Atkins,* 225 F.3d 510, 512 (5th Cir. 2000)(citing *Saraw Partnership v. United States,* 67 F.3d 567, 570-571 (5th Cir. 1995)); *JBP Acquisitions, L.P. v. United States,* 224 F.3d 1260, 1265 (11th Cir. 2000)(citing *Guild v. United States,* 685 F.2d 324, 325 (9th Cir. 1982)); *Mundy v. United States,* 983 F.2d 950, 952 (9th Cir. 1993)(citing *United States v. Fowler,* 913 F.2d 1382, 1387 (9th Cir. 1990)(quoting *Guild,* 685 F.2d at 325)); *Appley Bros. v. United States,* 7 F.3d 720, 728 (8th Cir. 1993).

"The key question is 'whether the chain of causation from the alleged negligence [or wrongful act] to the alleged injury depends upon the transmission of misinformation by a government agent.'"  *Metropolitan Life Ins. Co.,* 225 F.3d at 512 (quoting *Commercial Union Ins. Co. v. United States,* 928 F.2d 176, 179 (5th Cir. 1991)); *See also JBP Acquisitions, L.P.,* 224 F.3d at 1266 (applying misrepresentation exception because "the plaintiff does not point to

any negligence by the Government that is independent of or in any real way removed from its misrepresentation to JBP…").  Applying this test, the Eighth Circuit has recognized that a "cause of action for breach of a regulatory duty does not depend on the transmission of erroneous information as an essential element."  *Appley Bros.,* 7 F.3d at 728 (citing *National Carriers Inc. v. United States*, 755 F.2d 675, 677 (8th Cir. 1985)).

In the instant case, Plaintiffs allege the government's negligent performance of regulatory duties (*i.e.*, the negligent performance of "operational tasks"), with any misrepresentations being merely collateral to such performance.  First, the Plaintiffs allege the government failed to investigate McLeod as required by the applicable FARs.  Following the chain of causation, if the government had performed any investigation of McLeod—even a cursory one—McLeod would likely not have been introduced to any of the Plaintiffs and their damages would not have resulted.  Nothing about this theory of negligence "depends upon the transmission of misinformation by a government agent."  Second, the Plaintiffs allege senior agency officials committed wrongful acts, prohibited by regulations and criminal laws, which caused them to give preferential treatment to McLeod.  Again, following the chain of causation, if these officials did not accept valuable gifts from McLeod they would not have engaged McLeod in the nearly exclusive manner that occurred and Plaintiffs likely would not have been damaged.  Again, this is unrelated to any misstatements by any government agent.  Finally, the Plaintiffs contend the agencies breached their regulatory duty to ensure specific financial investment advice was not provided in connection with agency retirement financial education activities.  If this regulatory duty had been adhered to, McLeod would not have been able to obtain employees' private financial information or solicit them to invest in the FEBG Fund, and damages would have been avoided.  Here again, nothing in this chain of causation depends upon the transmission of

misinformation by a government agent.  While it certainly is true that, in the absence of the misrepresentation exception, Plaintiffs could have also sued for negligent misrepresentation in light of senior agency officials openly endorsing McLeod, causing Plaintiffs to place their trust in him, it does not follow that Plaintiffs are barred from pursuing distinct claims arising out of other aspects of the government's conduct. *Block,* 460 U.S. at 298.

The government relies on several cases decided before the Supreme Court's decision in *Block* to argue that were it not for the government's endorsement of McLeod, "Plaintiffs would not have decided to entrust their money to McLeod, and no injury would have occurred."  Def. Mem. at 34.  In other words, the government believes that because Plaintiffs cannot sue for negligent misrepresentation, **<u>all</u>** of Plaintiffs' claims distinct from misrepresentation should also be barred.  This, however, is not the law.  *Block,* 460 U.S. at 298.  The government first cites *Preston v. United States,* 596 F.2d 232 (7th Cir. 1979).  Def. Mem. at 34.  In *Preston,* the government conducted negligent audits of a warehouse and thereby impliedly misrepresented that the warehouse was safe for use.  Applying the misrepresentation exception, the court noted that plaintiffs presented "no suggestion that apart from the implied misrepresentation the allegedly negligent audits would have constituted a [distinct] tort."  *Preston,* 596 F.2d at 239.  Thus the circumstances in *Preston* were controlled by the Supreme Court's decision in *Neustadt.*  In *Neustadt,* the plaintiff "alleged no injury that he would have suffered independently of his reliance on the erroneous appraisal."  *Block,* 460 U.S. at 296 (discussing *Neustadt*).  The government's reliance on *Preston* is therefore misplaced in this case.

The government cites another Seventh Circuit case decided before *Block, Redmond v. United States,* 518 F.2d 811 (7th Cir. 1975), in support of its position.  Def. Mem. at 36.  In *Redmond,* all of the allegations presented in plaintiff's complaint related to misrepresentations,

36

either expressed or implied, made by government agents to the plaintiff. *Redmond,* 518 F.2d at

813 (listing allegations in complaint). "[T]he allegations of the complaint clearly state a course

of events calculated to mislead Redmond by a series of misstatements of fact, half-truths, and

deception; that the Government's agents are alleged to have been involved in the dissemination

of the misleading information, and that the complaint clearly alleges that the agents were

attempting to represent Wuensche [a government 'confidence man'] as being something he was

not." *Redmond,* 518 F.2d at 814. Accordingly, the *Redmond* court found the case was controlled

by the Supreme Court's decision in *Neustadt. Id.* As was the case in *Preston,* the plaintiff had

not alleged any injury that he would have suffered absent the misrepresentations made.

*Redmond,* therefore has no application to this case.

The government next cites to *Boda v. United States,* 698 F.2d 1174 (11th Cir. 1983) in

which Ms. Boda sued the United States after she entered into a series of business agreements

with a participant in the federal witness protection program ("WPP") who used the name Peter

Abate. Def. Mem. at 37. Ms. Boda alleged that WPP officials furnished Abate with references

and other documents which induced her to enter into the agreements and to give Abate access to

her heirloom diamond ring, which Abate stole. *Boda,* 698 F.2d at 1175. Accepting the

reasoning of *Redmond,* the court found the case was controlled by *Neustadt. Id.* at 1176. This is

unsurprising since Ms. Boda did not allege any injury that she would have suffered absent the

misrepresentations made by the WPP officials.

Lastly, the government relies on *Frigard v. United States*, 862 F.2d 201 (9th Cir. 1988), a

case decided after *Block*. Def. Mem. at 35-36. Mr. and Mrs. Frigard sued the government

alleging the CIA had misrepresented its participation in a company with which they had invested

funds, causing them to lose their investment. *Frigard*, 862 F.2d at 202. The Ninth Circuit

affirmed dismissal under the misrepresentation exception because "all of [plaintiffs'] claims [were] for 'damages from commercial decisions based upon false or inadequate information provided by the government.'" *Id.* at 203.  In so holding, however, the *Frigard* Court noted that "[t]he Frigards could reframe their claims to exclude the misinformation and reliance elements, and thereby avoid the bar of the misrepresentation exception." *Id.* (citing *Block,* 460 U.S. at 297-298).  Unlike *Frigard* and the other cases relied upon by the government, the Plaintiffs here do not allege negligent misrepresentation.  Nor is government misstatements an essential element of Plaintiffs' claims.   Breach of regulatory duties, as alleged in this case, do not depend on the transmission of erroneous information as an essential element.  *See Appley Bros.,* 7 F.3d at 728.

The government makes a specific argument against Count III of the Complaint at pages 38-39 of its Memorandum.  The government points out that under the misrepresentation bar to jurisdiction, fraud claims against the government are not permissible under the FTCA, and argues that "if the government cannot be liable for actually defrauding someone, then it cannot be liable for conduct that constitutes facilitation of or the aiding and abetting of another's fraudulent scheme."   Def. Mem. at 38-39 (citing *Beneficial Consumer Discount Co. v. Poltonowicz,* 47 F.3d 91 (3d Cir. 1995) and *Sutter v. United States,* 2005 WL 6124845 (W.D.N.C. Mar. 1, 2005)).  While Plaintiffs have no quarrel with the government's argument, Count III does not allege aiding and abetting McLeod's fraud; rather Count III alleges a distinctly separate cause of action for aiding and abetting McLeod's breach of fiduciary duty.  That the former may be prohibited by the misrepresentation exception does not mean the later must also be prohibited.

"To state a claim for a breach of fiduciary duty, Plaintiffs must allege that a fiduciary duty existed, that the [fiduciary] breached that duty, and that the breach was the proximate cause

of damages." *Hines v. Fiserv, Inc.,* 2010 WL 1249838, *2 (M.D.Fla. Mar. 25, 2010).  One may aid and abet another's breach of fiduciary duty through substantial assistance.   "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Hines* at *3 (citing *Lerner v. Fleet Bank, N.A .,* 459 F. 3d 273, 295 ( 2d Cir. 2006)).[9]   Count III alleges that the United States "substantially assisted McLeod" by failing to act in a number of ways when required to do so. *See* Compl. ¶ 171.   Unlike a claim for fraud directly against the government or governmental aiding and abetting of another's fraud, aiding and abetting a breach of another's fiduciary duty does not depend upon the transmission of misinformation by a government agent.  Accordingly, such claims are permissible under the FTCA. *See e.g., Pearson v. United States,* 831 F.Supp.2d 514, 519-522 (D.Mass. 2011)(sustaining claim for breach of fiduciary duty under FTCA).  While a claim for aiding and abetting fraud and a claim for aiding and abetting breach of a fiduciary duty may present some overlapping factual and legal questions, this does not result in a lack of jurisdiction under the misrepresentation exception.  *Block,* 460 U.S. at 298.

**D.  The interference with contract rights exception does not deprive this Court of subject matter jurisdiction.**

The government attempts to recast Plaintiffs' negligence Complaint as one "aleg[ing] that the United States negligen[tly] interfered with Plaintiffs' ability to invest their funds in the TSP or into pension funds" in order to argue application of the "interference with contract rights" exception under 28 U.S.C. § 2680(h).  Def. Mem. at 39 (citing Compl. ¶¶ 184-278).   The damages paragraphs cited by the government, however, simply detail the damages claimed as a result of the negligent conduct alleged elsewhere in the Complaint.  Plaintiffs' damages include lost earnings caused by the government's tortuous conduct, but the Complaint does not allege

---

[9] *Lerner* is specifically referenced in Count III.  *See* Compl. ¶ 169.

that the government interfered with Plaintiffs' contract rights in any way.[10]   Courts faced with

similar arguments, looking to the Supreme Court's decision in *Block v. Neal,* discussed *supra,*

have rejected application of the interference with contract rights exception simply because the

measure of damages overlap.

For example, in *Sowell v. United States,* 835 F.2d 1133 (5th Cir. 1988), the government

appealed a damage award under the FTCA for the Army's negligence in failing to process an

allotment form submitted by a servicemen, arguing the claim was barred by the interference with

contract rights exception under § 2680(h).  *Sowell,* 835 F.2d at 1134.  Applying the reasoning of

*Block,* the Fifth Circuit focused on the separate duties owed, stating: "Similarly, in this case, the

duty the Army owed to use due care in processing Sowell's allotment forms is distinct from any

duty the Army may have had not to interfere with existing or potential contractual relationships

between Sowell and MILCO."  *Id.* at 1135.  Significantly, the Court further observed:

> The fact that the measure of damages-loss of the value of insurance coverage-
> from the Army's failure to fulfill its duty to process the forms correctly is the
> same as it would have been for interfering with contract rights does not merge the
> duties. The same identity of damages was present in *Block v. Neal* where the loss
> caused by failure to supervise would be the same as the loss caused by the
> misrepresentation that the construction was proper-the value of deficiencies in the
> contractor's performance.

*Id.*  The Ninth Circuit observed a similar distinction in *Mundy v. United States,* 983 F.2d 950,

(9th Cir. 1993).  Observing that "Mundy's complaint contains no claim for interference with

prospective advantage," the Court refused to accept the government's re-characterization of

Mundy's claims as "simply and extension of a claim for interference with contractual relations."

---

[10] The government does not argue that Plaintiffs' lost earnings constitute disallowed "interest
prior to judgment" under 28 U.S.C. § 2674.  In a case directly on point, the Eighth Circuit
foreclosed such an argument, ruling that lost pension earnings resulting from the government's
negligence was distinct from "pre-judgment interest" within the meaning of the FTCA.  *See
Manko v. United States,* 830 F.2d 831, 837 (8th Cir. 1987).

*Id.* at 953.   As in *Sowell,* the Ninth Circuit found that "[e]ven though the damages sought by

Mundy are similar to those obtainable on an interference claim, the tortuous wrong alleged in the

complaint is the failure to process a security clearance with due care, not an interference with

contract." *Id.* (citing *Black v. Sheraton Corp. of America,* 564 F.2d 531 (D.C. Cir. 1977)); *see*

*also Appleton v. United States,* 69 F.Supp.2d 83, 89 (D.D.C. 1999)(Utilizing *Block's* analysis

and observing: "When deciding the scope of the contract exception … the courts have drawn a

definite distinction between contract claims and negligence claims. Rather than treat the contract

exception as an unlimited bar to recovery, courts have entertained contract-related claims[11] that

allege negligence.").

---

[11] A significant question exists whether Plaintiffs could ever have formed any contract with McLeod to be interfered with, since the FEBG Bond Fund did not exist and Plaintiffs received no consideration for their investment. Under Florida law, a complete failure of consideration may prevent the formation of a contract. *See e.g., Jason Enterprises of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1308 (11th Cir. 1998)("more fundamentally, JEJ gave no consideration in exchange for the mileage guarantee, and thus no contract was formed."); *American Coach Lines of Orlando, Inc. v. North American Bus Indus., Inc.,* 2011 WL 653524, *23 (M.D. Fla. Feb 14, 2011)("Absent any consideration provided by American Coach for promises to repair or provide replacement parts, no contract was formed."); *Nelson v. Target Corp.,* 2009 WL 2150893, *2 (M.D. Fla. July 13, 2009)("A lack of consideration means no valid contract was formed."); *La Rosa Del Monte Exp., Inc. v. G.S.W. Enterprises Corp.,* 483 So.2d 472 (D.C. App. Fla. 1986)(same); *Marks v. Fields*, 160 Fla. 789, 36 So.2d 612 (1948)(same). Although the government points out that the interference with contract rights exception applies to both existing contracts and "claims for prospective economic advantage," the government points to no allegations regarding any "prospective" contracts desired or anticipated by Plaintiffs. In each of the cases cited by the government for this proposition, the complaint alleged some "prospective" business advantage alleged to have been interfered with.  *See Art Metal-USA, Inc. v. United States,* 753 F.2d 1151, 1153 (D.C. Cir. 1985)("complaint alleged that GSA officials interfered with [Art Metal's] prospective economic advantage" relating to anticipated or cancelled government contracts); *Moessmer v. United States,* 760 F.2d 236, 237 (8th Cir. 1985)(complaint "alleged the CIA had interfered with [plaintiff's] prospective economic advantage by preventing his [promised] employment with Continental."); and *Small v. United States,* 333 F.2d 702, 704 (3d Cir. 1964)(complaint alleged "one who negligently interrupts the business of another is responsible under Delaware law for the natural and probable consequences of his act.").  No similar allegations are contained in the instant Complaint.

## II.   ALL PLAINTIFFS PROPERLY EXHAUSTED THEIR ADMINISTRATIVE REMEDIES.

The government argues that "because certain plaintiffs failed to separately state sums certain for the injuries they sustained individually, these plaintiffs failed to exhaust their administrative remedies."  Def. Mem. at 43.  The government's argument, in essence, is that because some claimants who are husband and wife used a single Standard Form 95 to present their administrative claims, their claims must be dismissed.  *See* Def. Mem. at 42 ("The FTCA requires that *each* claim and *each* claimant meet the prerequisites for maintaining a suit against the government.")(quoting *Dalrymple v. United States,* 460 F.3d 1318, 1325 (11th Cir. 2006)).  Despite the government's protestations, all of the administrative claims in this case satisfy the requirements of 28 U.S.C. § 2675(a).

To satisfy section 2675(a), a claimant must do only two things: (1) give the appropriate agency written notice of his or her claim sufficient to enable the agency to investigate and (2) place a value on his or her claim. *Burchfield v. United States,* 168 F.3d 1252, 1255 (11th Cir. 1999)(citing *Adams v. United States*, 615 F.2d 284, 289 (5th Cir.), *decision clarified on denial of reh'g,* 622 F.2d 197 (5th Cir. 1980)); *Free v. United States,* 885 F.2d 840, 842 (11th Cir. 1989)(citing *Tidd v. United States,* 786 F.2d 1565 (11th Cir. 1986)).  To satisfy these two requirements, it is not necessary for each claimant to submit a separate claim form.  "Multiple claimants may submit one form containing all claims, and provide an aggregate sum certain for all of the claimants" where each person is identified as a "claimant" and sufficient facts are presented to permit the government to investigate.  *Turner v. United States,* 514 F.3d 1194, 1201 (11th Cir. 2008); *Eskine v. United States,* 1995 WL 495903 (E.D.La. Aug. 18, 1995)("[N]umerous courts have held that a husband and wife may submit a single SF 95, so long as the form sets forth sufficient facts to warrant an agency investigation and to constitute notice

of the spouse's claim.")(collecting cases).  Even where an administrative claim fails to identify all "claimants," the notice requirements section 2675(a) will be satisfied if the government is provided sufficient information to identify the unnamed claimants.  *Hiatt v. United States,* 910 F.2d 737, 741 (11th Cir. 1990)(citing *Transco Leasing Corp. v. United States,* 896 F.2d 1435, 1441-1444 (5th Cir. 1990)); *Morgan v. United States,* 2000 WL 34012857 (M.D.Fla. Dec. 12, 2000); *In re Air Crash,* 2013 WL 646257 (S.D. Fla. Feb. 21, 2013).

Congress had a dual purpose in enacting section 2675(a): to encourage prompt settlement of claims and to ensure fairness to FTCA litigants. *Burchfield,* 168 F.3d at 1255. The Senate reported that the law was intended to "provid[e] for more fair and equitable treatment of private individuals and claimants when they deal with the Government or are involved in litigation with their Government." *Id.*  (citing S.Rep. No. 89-1327, at 2 (1966), reprinted in 1966 U.S.C.C.A.N. 2515, 2515-16 (quoting House report)). It further stated that the administrative claim requirement, by giving agencies an opportunity to settle suits before litigation commenced, would "ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." *Id.*; *see also McNeil v. United States*, 508 U.S. 106, 111-12 (1993)(stating that purpose of section 2675(a) is to give federal agencies "a fair opportunity to investigate and possibly settle ... claim[s]"); *Adams v. United States*, 615 F.2d 284, 288 (5th Cir. 1980) (noting legislative history evidencing statute's purpose). "Congress, therefore, enacted section 2675(a) not to place procedural hurdles before potential litigants, but to facilitate early disposition of claims." *Burchfield,* 168 F.3d at 1255 (quoting *Lopez v. United States*, 758 F.2d 806, 809 (1st Cir.1985) ("[I]ndividuals wishing to sue the government must comply with the details of [section 2675], but ... the law was not intended to put up a barrier of technicalities to defeat their claims.")).

43

With the purpose of section 2675(a) in mind, the Eleventh Circuit has "held that a claimant must give an administrative agency only enough information to allow the agency to 'begin its own investigation' of the alleged events and explore the possibility of settlement." *Burchfield,* 168 F.3d at 1255 (quoting *Adams,* 615 F.2d at 292).  The Eleventh Circuit does "not require the claimant to provide the agency with a preview of his or her lawsuit by reciting every possible theory of recovery, . . . or every factual detail that might be relevant." *Burchfield,* 168 F.3d at 1255 (quoting *Brown v. United States*, 838 F.2d 1157, 1160-61 (11th Cir. 1988) and *Adams*, 615 F.2d at 291-92)).  In short, the amount of information required is "minimal." *Burchfield,* 168 F.3d at 1255 (quoting *Adams*, 615 F.2d at 289).

The government has attached to its motion to dismiss the joint administrative claims filed wherein spouses used the same claim form.  *See* Def. Mem. Exs. 2-52.  In **every instance** block #2 of the SF 95 claim form identifies both spouses as "claimants."  *Id.*  In addition, each SF 95 form was accompanied by a letter from undersigned counsel identifying both spouses as "claimants."  *Id.*  Every claim form also identified the total amount of the claim in block #12(d) and attached a detailed factual statement regarding the joint claims in response to block #10.  *Id.* Additional exhibits and documentary evidence detailing the amount of the joint claim were also attached to each SF 95 form.  *Id.; Turner,* 514 F.3d at 1201 (agency must also consider documentation presented to the agency which will allow the agency to calculate or estimate damages).

The government does **not** assert, nor could it, that any of the claims at issue provided insufficient information to enable the agency to investigate the claims. Nor may an agency refuse to investigate the information actually provided.  "An administrative agency is deemed to be on notice not only of the theories of recovery stated in the claim, but of the theories of recovery that

44

its reasonable investigation of the specific allegations of the claim should reveal." *Burchfield,* 168 F.3d at 1255; *Rise v. United States*, 630 F. 2d 1068, 1071 (5th Cir. 1980)("if the Government's investigation of Rise's claim should have revealed theories of liability other than those specifically enumerated therein, those theories can properly be considered part of the claim.").  If, after reviewing the claims at issue, an agency was unsure about the specific sum certain stated in block #12(d), *i.e.,* whether the sum certain was a total for both claimants on the form, the agency could have asked the claimants for clarification, but did not do so.  *See* M. Fowler Decl., **Exhibit 1**.   The law is clear that a husband and wife may "provide an aggregate sum certain" for all of their claims. *Turner,* 514 F.3d at 1201; *Transco Leasing Corp. v. United States,* 896 F.2d 1435, 1443 (5th Cir. 1990) (finding administrative claim sufficient where government did not request supplemental information from the claimant); *In re Air Crash,* 2013 WL 646257, *3 (S.D. Fla. Feb. 21, 2013)(finding the government could have requested additional information had it felt further information regarding the claim was needed).

In sum, all of the claims at issue gave the appropriate agency written notice of the joint claim sufficient to enable the agency to investigate and each placed a total value on the joint claim.  Nothing further is required.  *Burchfield,* 168 F.3d at 1255.  In a footnote, the government argues that the joint claims of certain spouses should be dismissed because only one spouse signed the SF 95 claim form.  Def. Mem. at 44 n.24.  The relevant statutory provision, 28 U.S.C. § 2675(a), does not, however, require a signature.   Rather, the statute requires only "presentment" of the claim to the government.  28 U.S.C. § 2675(a).  The requirement for a signature is found in the regulations promulgated by DOJ pursuant to 28 U.S.C. § 2672.  *See* 28 C.F.R. § 14.2.  In *Adams,* a case binding in the Eleventh Circuit, the Fifth Circuit held that "the jurisdictional notice requirements of § 2675(a) [are] not to be read in light of the regulations

promulgated pursuant to § 2672." *Transco Leasing Corp.,* 896 F.2d at 1442 (discussing *Adams*).

The *Adams* court made clear that "the notice requirements of 28 U.S.C. § 2675(a) are independent of the regulations governing the settlement process promulgated pursuant to 28 U.S.C. § 2672," and that noncompliance with § 2672, and the regulations promulgated thereunder, "deprives a claimant only of the opportunity to settle his or her claim outside the courts;" it does not deprive the court of jurisdiction. *Id.* at 1442 (citing *Adams*, 615 F.2d at 290). The case cited by the government in support of its argument, *Walker v. United States,* 471 F.Supp. 38 (M.D.Fla. 1978), Def. Mem. at 44, n.24, predates *Adams* and is not controlling insofar as it conflicts with *Adams.* None of the claims identified by the government should be dismissed for failure to exhaust administrative remedies.

### III.   VENUE IS PROPER IN THE MIDDLE DISTRICT OF FLORIDA.

Pursuant to 28 U.S.C. § 1402(b), venue is proper in a FTCA case either "in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."  In this case, venue is proper on both grounds.  First, the Complaint alleges a large number of Plaintiffs are residents of Florida.  *See* Compl. ¶¶ 13, 16, 21, 22, 28, 30, 39, 44, 47, 48, 55, 58, 59, 67, 75, 89, 92, 93, 96, 97, 99 and 101.  Of the Plaintiffs residing in Florida, 27 reside in the Middle District of Florida.  *See* M. Fowler Decl., **Exhibit 1, Tab B.**  The government, quoting a footnote in *Richards v. United States,* 396 U.S. 1, 12 n.25 (1962), completely out of context, argues that "[w]here, as here, multiple plaintiffs join together to bring an action under the FTCA, [§ 1402(b)] allows the action to be brought only where **all** the plaintiffs reside, or where the act or omission complained of occurred."  Def. Mem. at 45 (emphasis in original).  The government not only takes the footnote's language out of context but also fails to comprehend the holding in *Richards.*

The question presented in *Richards* was what law a Federal District Court should apply in an action brought under the FTCA where an act of negligence occurs in one State and results in an injury and death in another State. *Richards,* 396 U.S. at 2. The petitioners in *Richards* were the personal representatives of passengers killed when an airplane owned by the respondent, American Airlines, crashed in Missouri while en route from Tulsa, Oklahoma, to New York. *Id.* at 3. Suit was brought by the petitioners against the United States in the Federal District Court for the Northern District of Oklahoma, on the theory that the Civil Aviation Agency had 'negligently failed to enforce the terms of the Civil Aeronautics Act and the regulations thereunder which prohibited the practices then being used by American Airlines, Inc., in the overhaul depot of Tulsa, Oklahoma. *Id.* The petitioners in each case either had already received a $15,000 settlement from the Airlines, the maximum amount recoverable under the Missouri Wrongful Death Act, or had been tendered that amount. *Id.* They sought additional amounts from the United States under the Oklahoma Wrongful Death Act which contained no limitation on the amount a single person may recover from a tortfeasor. *Id.* at 3-4.

Petitioners argued that in selecting the law to determine liability under the FTCA, only the "internal law of the place where the negligence occurred" (excluding choice-of-law rules) should be applied, enabling them to recover additional damages under the Oklahoma Wrongful Death Act notwithstanding that Oklahoma choice-of-law rules would result in application of the Missouri Wrongful Death Act, because that's where the crash occurred. *Richards,* 396 U.S. at 2, 11-12. The government, on the other hand, argued the whole law (including choice-of-law rules) of the place where the negligence occurred should be applied. *Id.* Adopting the government's position, the Supreme Court explained that its interpretation of the FTCA was consistent with reading the FTCA as a whole, with due regard for its purpose:

> [O]ur interpretation enables the federal courts to treat the United States as a
> 'private individual under like circumstances,' and thus is consistent with the Act
> considered as a whole. The general conflict-of-laws rule, followed by a vast
> majority of the States, is to apply the law of the place of injury to the substantive
> rights of the parties. Therefore, where the forum State is the same as the one in
> which the act or omission occurred, our interpretation will enable the federal
> courts to treat the United States as an individual would be treated under like
> circumstances. [FN 25]  Moreover, this interpretation of the Act provides a degree
> of flexibility to the law to be applied in federal courts that would not be possible
> under the view advanced either by the petitioners or by American. Recently there
> has been a tendency on the part of some States to depart from the general conflicts
> rule in order to take into account the interests of the State having significant
> contact with the parties to the litigation. We can see no compelling reason to
> saddle the Act with an interpretation that would prevent the federal courts from
> implementing this policy in choice-of-law rules where the State in which the
> negligence occurred has adopted it. Should the States continue this rejection of
> the older rule in those situations where its application might appear inappropriate
> or inequitable, the flexibility inherent in our interpretation will also be more in
> step with that judicial approach, as well as with the character of the legislation
> and with the purpose of the Act considered as a whole.

*Richards,* 396 U.S. at 11-13 (some footnotes omitted).  To support its position that "all"

plaintiffs in this case must reside in the Middle District of Florida, the government cites Note 25

out of context.  Note 25 provides in full:

> For example, had the petitioners in the instant case brought suit against American
> as well as the United States, the petitioners' interpretation of the Act would have
> the District Court determine the American's liability by the law of Missouri and
> the United States' by the law of Oklahoma. Under our construction of the Act,
> however, both defendants' liability would be determined by the law of Missouri.
> However, because of the venue provision in the statute, allowing suit to be
> brought where all the plaintiffs reside as well as where the act or omission
> occurred (28 U.S.C. § 1402(b), 28 U.S.C.A. § 1402(b); *see Knecht v. United
> States,* 3 Cir., 242 F.2d 929; *Olson v. United States,* 8 Cir., 175 F.2d 510), a
> situation may arise where a District Court could not determine the Government's
> and a private individual's liability in exactly the same manner.

*Richards,* 396 U.S. at 12, n.25.  Taken in its proper context, the last sentence of Note 25 means

that "allowing suit to be brought where all the plaintiffs reside [i.e., to be brought in different

states] as well as where the act or omission occurred," which could also mean different states, could lead to "a situation … where a District Court could not determine the Government's and a private individual's liability in exactly the same manner."   The Supreme Court's reference to *Knecht v. United States*, 242 F.2d 929 (3d Cir. 1957) and *Olson v. United States*, 175 F.2d 510 (8th Cir. 1949) in the same sentence makes clear that the Court was not announcing a new interpretation of 28 U.S.C. § 1402(b) in which all plaintiffs in a multi-plaintiff case must reside in the same state.[12]   Accordingly, venue for this action properly lies in the Middle District of Florida.

Venue is also proper in the Middle District of Florida because "the act or omission complained of occurred" in this district.   Although the venue statute, 28 U.S.C. § 1402(b), contains the language "wherein the act or omission complained of occurred" and the FTCA's liability provision, 28 U.S.C. § 1346(b), contains similar language providing liability "in accordance with the law of the place where the act or omission occurred," the Supreme Court in *Richards* considered only the proper choice-of-law to be applied under the later provision and expressly distinguished the issue of venue under the FTCA, stating that "considerations underlying the problem of venue are substantially different from those determining applicable law."  *Richards,* 396 U.S. at 9-10, n.20; *Spotts v. United States,* 562 F.Supp.2d 46, 54 (D.D.C. 2008)(noting a "legal infirmity" with plaintiffs' argument attempting to apply the holding in *Richards* that "under the FTCA, the relevant location is where the act or omission giving rise to

---

[12] In *Knecht,* following a fatal car crash in Alaska, the personal representative sued—as the sole plaintiff—under the FTCA in Pennsylvania. *Knecht*, 242 F.2d at 930.  The court held the United States' liability was limited under the FTCA to $15,000, the maximum which could be awarded under Alaska's wrongful death statute. *Id.* at 930-931.  Similarly, the *Olson* case involved an action by a personal representative—as the sole plaintiff—in South Dakota following a fatal accident in Utah involving the crash of an airplane piloted by a federal employee. *Olson*, 175 F.2d at 511.  The court found error in the trial court's application of South Dakota law, rather than the law of Utah, where the accident occurred.

the tort occurred, rather than the place where the operative effect is felt" to the issue of venue under the FTCA).

Despite the Supreme Court's statement in *Richards* that "considerations underlying the problem of venue are substantially different from those determining applicable law," courts have nevertheless applied *Richards'* reasoning to the similar language in § 1402(b). *See Metro Aviation Inc. v. United States,* 2010 WL 1881875, *2 (D.Mont. May 10, 2010)(citing cases). In this case, Plaintiffs allege multiple acts and omissions in multiple places, including the Middle District of Florida. For example, the Complaint alleges that the government failed to conduct any investigation of McLeod as required by the FARs. *See e.g.,* Compl. ¶ 152. Since McLeod and FEBG were located in Jacksonville, Florida, Compl. ¶ 106, and any investigation of a company in Jacksonville would necessarily occur, in whole or in part, in Jacksonville, one "omission" complained of by all Plaintiffs in this case occurred in the Middle District of Florida. Plaintiffs' additional allegations involving the wrongful solicitation and acceptance of valuable gifts by senior agency officials occurred in the Middle District of Florida and elsewhere.[13] Likewise, agency employees failed to ensure McLeod did not provide specific financial investment advice in many locations, including the Middle District of Florida.[14]

"Neither the text of the FTCA nor *Richards* provides any guidance when the alleged acts or omissions occur in more than one state. Moreover, the legislative history of the FTCA sheds no light on this problem." *Sosa v. Alvarez-Machain,* 542 U.S. 692, 758-759 (2004)(Ginsberg J. and Breyer J. concurring)(quoting *Gould Electronics Inc. v. United States,* 220 F.3d 169, 181 (3d Cir. 2000) and *Raflo v. United States*, 157 F.Supp.2d 1, 9 (D.D.C. 2001)). The government does

---

[13] As just a single example, Superbowl XXXIX, attended by McLeod and agency officials, was played on February 6, 2005, at Alltel Stadium in Jacksonville, Florida. The Patriots defeated the Eagles by the score of 24–21.

[14] *See* M. Fowler Decl., **Exhibit 1, Tab C.**

not suggest any more appropriate venue for this case other than the Middle District of Florida. Following the government's arguments to their logical conclusion, venue does not lie in any single jurisdiction in the United States.  At best, the government would have had each plaintiff file a separate but nearly identical lawsuit in the place where they reside, creating a gigantic waste of judicial resources, greatly inconveniencing witnesses, including government witnesses, who would be required to visit all of the different jurisdictions separately to provide similar testimony, and creating  an unnecessary risk of inconsistent rulings.[15]

This court should interpret the FTCA in such a way as to avoid the type of "venue gap" presented by the government's arguments.  In a case settling a long controversy over whether the foreign country exception applied to actions brought against the United States under the FTCA for injuries occurring in Antarctica, the Supreme Court observed:

> Section 1346(b) is not, however, the only FTCA provision that contradicts petitioner's interpretation of the foreign-country exception. The statute's venue provision, § 1402(b), provides that claims under the FTCA may be brought "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." Because no federal judicial district encompasses Antarctica, petitioner's interpretation of the FTCA would lead to yet another anomalous result: The FTCA would establish jurisdiction for all tort claims against the United States arising in Antarctica, but no venue would exist unless the claimant happened to reside in the United States. As we observed in *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706, 710, n. 8, 92 S.Ct. 1936, 1939, n. 8, 32 L.Ed.2d 428 (1972), "Congress does not in general intend to create venue gaps, which take away with one hand what Congress has given by way of jurisdictional grant with the other." Thus, in construing the FTCA, it is "reasonable to prefer the construction that avoids leaving such a gap," *ibid.,* especially when that construction comports with the usual meaning of a disputed term.

*Smith v. United States,* 507 U.S. 197, 202-203 (1993).

---

[15] Were this Court to announce an intention to transfer the cases for non-Florida Plaintiff's to their individual states of residence pursuant to 28 U.S.C. §§ 1404(a) and/or 1406 in the interests of justice, as opposed to dismissing their claims as the government desires, Plaintiffs believe the government would immediately recognize the undesirability of disjointed multi-state litigation and would consent to venue in the Middle District of Florida.

Putting the government's various challenges to subject matter jurisdiction aside, it is clear that this Court has jurisdiction over **all** of the Plaintiffs and **all** of the Plaintiffs' claims in this single unified action.  First, 28 U.S.C. § 1346(b) grants to the district courts original jurisdiction over claims brought under the FTCA.  Second, if just a single Plaintiff meets jurisdictional requirements, 28 U.S.C. § 1367(a) grants "supplemental jurisdiction" over the claims of other plaintiffs in the same Article III case or controversy.  *Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 549 (2005).

In *Exxon Mobil Corp.,* the Supreme Court recognized that § 1367(a), enacted in 1990, was intended to overrule the Court's prior decision in *Finley v. United States,* 490 U.S. 545 (1989).  *Exxon Mobil Corp.,* 545 U.S. at 558.  The plaintiff in *Finley* brought a FTCA negligence suit against the FAA in District Court, which had original jurisdiction under § 1346(b).  *Exxon Mobil Corp.,* 545 U.S. at 556-558 (discussing *Finley*).  The plaintiff tried to add related claims against other defendants, invoking the District Court's supplemental jurisdiction over so-called pendent parties. *Id.*  The Supreme Court held in *Finley* that the District Court lacked a sufficient statutory basis for exercising supplemental jurisdiction over these claims. *Id.* Specifically, the Court stated in *Finley* that "a grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties." *Finley* 490 U.S., at 556.

Here, it is clear that at least one Plaintiff resides in the Middle District of Florida and therefore may bring an FTCA action in the Middle District of Florida consistent with § 1402(b).  It follows that, through § 1367(a), Congress has granted supplemental jurisdiction over all of the other Plaintiffs' related claims arising out of the same nucleus of operative facts.  Because "Congress does not in general intend to create venue gaps, which take away with one hand what

Congress has given by way of jurisdictional grant with the other," this court should interpret §

1402(b) in a way that avoids the venue gap suggested by the government. *Smith,* 507 U.S. at

202-203.  Venue is proper in the Middle District of Florida because (1) many Plaintiffs reside in

this district and (2) many of the acts and omissions complained of occurred in this district.

Alternatively, venue is also proper in this case under the "pendent venue" doctrine.  The

leading case on the pendent venue doctrine describes it thusly:

> In the context of subject matter jurisdiction, the concept of "cause of action" has
> been replaced as the touchstone for analysis by the doctrine of pendent
> jurisdiction. This familiar concept has also spilled over into the rules of venue.
> The doctrine of "pendent venue" is now well established, particularly in cases
> where the court has previously exercised its discretion to hear a certain claim
> under pendent jurisdiction. As one commentator noted, "[i]t would seem that if
> procedural convenience is enough to avoid the constitutional limitations on the
> jurisdiction of the federal court, it should suffice also to dispense with the purely
> statutory requirements as to venue." Consequently, many pendent jurisdiction
> cases also apply the principles of pendent jurisdiction by analogy when one or
> more claims arising out of a common nucleus of operative facts do not satisfy the
> requirements of the applicable venue statute.

*Beattie v. United States,* 756 F.2d 91, 101 (D.C. Cir. 1985), *abrogated on other grounds by Smith*

*v. United States,* 507 U.S. 197 (1993).  District courts have discretion to apply the principle of

pendent venue based on applicable policy considerations. *Id.* at 103. "Some of these

considerations will be the same as those that support the exercise of pendent jurisdiction—

judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants."

*Id.* Another consideration is that the purpose of venue rules is generally considered to be

"primarily a matter of convenience of litigants and witnesses." *Id.* (quoting *Denver & R.G.W.R.*

*Co. v. Brotherhood of R.R. Trainmen*, 387 U.S. 556, 560 (1967).

The *Beattie* Court distinguished its earlier decision in *Reuber v. United States,* 750 F.2d

1039 (D.C. Cir. 1984), *overruled on other grounds by Kauffman v. Anglo-American School of*

*Sofia,* 28 F.3d 1223 (D.C. Cir. 1994), a case relied upon by the government in this case. *See* Def.

Memo. at 46; *Beattie,* 756 F.2d at 103, n.82. *Reuber* involved an attempt to use pendent venue over an FTCA claim in connection with a Privacy Act claim, over which the district court did have venue. *Id.* Rejecting application of pendent venue in *Reuber,* the Court explained that "consideration of judicial economy must keep in mind that Reuber has identical claims to those considered here, including an FTCA action, already pending in federal district court in Maryland," and noted that the district was a forum where Reuber did not reside and where the acts or omissions complained of did not occur. *Id.* In contrast, the Court applied pendent venue in *Beattie* because the doctrine was being "used to satisfy venue requirements for a portion of plaintiffs' FTCA claims, based on the satisfaction of venue requirements by the remainder of plaintiffs' claims in this FTCA case." *Id.*

Taking into consideration judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants, this case is clearly one in which pendent venue may be applied. The pendent venue doctrine has been recognized in the Middle District of Florida. *See Florida Medical Ass'n, Inc. v. Dep't of Health, Education, & Welfare,* 2011 WL 4459926, *6 (M.D. Fla. May 18, 2011)(finding that "even if such claims were asserted and could not otherwise be brought in this district, venue would still be proper under the pendent venue doctrine.")(citing *Beattie,* 756 F.2d at 101-102). For other cases applying the pendent venue doctrine, *see e.g., S.E.C. v. E-Smart Tech., Inc.,* __ F.Supp.2d __, 2013 WL 772915 (D.D.C. Mar. 1, 2013); *Noisette v. Geithner,* 693 F.Supp.2d 60 (D.D.C. 2010); *C.H. James & Co., Inc. v. Fed. Food Marketers Co.,* 927 F.Supp. 187 (S.D.W.V. 1996); *Christian Dalloz, S.A. v. Holden,* 1990 WL 121342, *5, n.2 (E.D. Pa. Aug. 20, 1990)(recognizing pendent venue doctrine but finding it unnecessary because all claims could be tried together in another district). The government's request to dismiss all claims for lack of venue should be denied.

## IV.    THE FEDERAL EMPLOYEES COMPENSATION ACT IS INAPPLICABLE TO THIS CASE.

The government asks this Court to hold the action in abeyance, as an alternative to dismissal, pending a decision by the Secretary of Labor regarding the possibility of coverage of some Plaintiffs' claims under the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.,* in accordance with the Eleventh Circuit's decision in *Noble v. United States,* 216 F.3d 1229 (11th Cir. 2000).  Def. Mem. at 47-54.  Because the FECA has no possible application to this case, this Court should decline to do so.   The FECA provides in pertinent part that "[t]he United States shall pay compensation as specified by this subchapter for the disability or death[16] of an employee resulting from personal injury **sustained while in the performance of his duty.**" 5 U.S.C. § 8102(a)(emphasis added).   Thus, the central question is whether Plaintiffs' injuries, in this case emotional distress, occurred "in the performance of [their] dut[ies]" as federal law enforcement agents.  *Avasthi v. United States,* 608 F.2d 1059, 1061 (5th Cir. 1979).

We agree with the government that "an injured employee may not bring an action against the United States under FTCA when there is a 'substantial question as to whether or not the injury occurred in the performance of the employee's duty'" so as to bring it within the coverage of FECA.  *Noble,* 216 F.3d at 1235 (citing *Avasthi*, 608 F.2d at 1060, quoting *Bailey v. United States*, 451 F. 2d 963, 965 (5th Cir. 1971)). "Where a federal employee brings an action against the United States and there is a substantial question as to whether FECA provides the employee's exclusive remedy for the alleged injury, the district court must … hold the action in abeyance pending a coverage determination by the Secretary." *Id.* (citing *Concordia v. United States*

---

[16] Although Plaintiffs allege emotional distress, they do not allege any "disability or death." Thus, a question is presented whether the mental distress alleged amounts to an "injury," defined in FECA to include, "in addition to injury by accident, a disease proximately caused by the employment…" 5 U.S.C. § 8101(5).  *See e.g., Miller v. Aldridge,* 1989 WL 62503, *2 (E.D. La. June 5, 1989).

*Postal Serv.*, 581 F.2d 439, 442-44 (5th Cir.1978)). A substantial question of coverage exists unless the court determines "as a matter of law that, viewing all of the circumstances, the Secretary could not find FECA coverage" of the alleged injury. *Id.* (quoting *Concordia*, 581 F.2d at 442).

In support of its position that a substantial question of coverage under FECA exists, the government proffers a declaration from Jennifer Valdivieso, Def. Mem. at 52 and Def. Ex. 53. Ms. Valdivieso, based on her reading of the allegations in the Complaint, opines that:

> As the complaint (in regards to those plaintiffs that are or were federal employees) states that the alleged tortious actions of the employing agencies were **the result of providing training in regards to retirement**, there is a substantial likelihood, based on the precedent described above, that ECAB would find that this was an **administrative or personnel matter that could be covered by FECA** if it is established that the employing agencies acted unreasonably in hiring McLeod to provide that training to the FEPs, thus establishing error or abuse on the part of the agencies.

Def. Mem. at 53-53 (quoting Def. Ex. 53)(emphasis supplied).  Ms. Valdivieso's opinion plainly is dependent upon tying the Plaintiffs' alleged emotional injuries to agency retirement training, which Ms. Valdivieso believes could be characterized as "administrative or personnel matters that could be covered by FECA." This is logical in light of the research Ms. Valdivieso conducted.  As she explains in her analysis:

> Emotional conditions may be covered by FECA when the injury results from an employee's emotional reaction to her regular or specially assigned work duties or to a requirement imposed by the employment.  In such cases, any disability comes within the coverage of FECA.  *Lillian Cutler,* 28 ECAB 125 (1976).  Incidents involving administration or personnel matters are generally not covered under FECA unless the employing establishment erred or acted abusively in the administrative or personnel matter. *Thompson D. McEuen*, 41 ECAB 387 (1990), *reaff'd on recon.,* 42 ECAB 566 (1991).

Def. Ex. 53, attachment A at 2.  Ms. Valdivieso goes on to explain that the ECAB has found the adequacy of job training to be an administrative or personnel matter and that an abuse or error in such matters may lead to FECA coverage.

The problem with Ms. Valdivieso's analysis and opinion is that the Complaint does not allege any injury resulting from an emotional reaction to any retirement training conducted by any agency.  Plaintiffs' alleged emotional injuries resulted entirely from their discovery, usually years after their exposure to McLeod at agency-sponsored retirement education seminars, that their life's savings, or a significant portion of such, had been stolen.  *See* **Exhibit 2** and Compl. ¶ 124 ("Plaintiffs did not discover McLeod's fraudulent scheme until after June 22, 2010, when McLeod committed suicide.").  In other words, the emotional reaction causing Plaintiffs' injuries was the emotional reaction to learning that they and their families had been victims of a serious theft after McLeod committed suicide; it was not an "emotional reaction to [Plaintiffs'] regular or specially assigned work duties or to a requirement imposed by the employment." Def. Ex. 53, attachment A at 2.   Thus, accepting everything Ms. Valdivieso says as true, her opinion simply does not address the injuries complained of.  On the facts presented, this Court may easily determine "as a matter of law that … the Secretary could not find FECA coverage of the alleged injury." *Id. Noble,* 216 F.3d at 1235 (quoting *Concordia,* 581 F.2d at 442).

## V.     CONCLUSION

For the reasons and authorities stated herein, this Court has proper subject matter jurisdiction over all Plaintiffs and all of Plaintiffs' claims, and venue is proper in the Middle District of Florida.  Accordingly, the government's motion to dismiss the claims in this action should be denied in their entirety.  This Court should also refuse to stay this case on the government's alternate theory that FECA may apply because there can be no reasonable doubt

57

that the injuries complained of did not occur in the line of duty.  Finally, Plaintiffs agree that 28 U.S.C. § 2402 does not provide a jury trial as of right in this case, however, the Eleventh Circuit permits the use of advisory juries in FTCA cases, and Plaintiffs request the Court to consider permitting an advisory jury in this case.  *See Newmann v. United States,* 938 F.2d 1258 (11th Cir. 1991).

Dated:  June 3, 2013                                    Respectfully submitted,

                                                        **SMITH, GILDEA & SCHMIDT, LLC**

                                                        s/ Ray M. Shepard
                                                        Ray M. Shepard, Admitted *Pro Hac Vice*
                                                        600 Washington Avenue, Suite 200
                                                        Towson, MD  21204
                                                        Telephone:  410-821-0070
                                                        Fax:  410-821-0071
                                                        E-mail: rshepard@sgs-law.com


                                                        **MARKS GRAY, P.A.**

                                                        Nicholas V. Pulignano, Jr.
                                                        Florida Bar No.: 0319181
                                                        Heath L. Vickers
                                                        Florida Bar No.:  0084769
                                                        1200 Riverplace Boulevard, Suite 800
                                                        Jacksonville, FL 32207
                                                        Telephone: 904-807-2105
                                                        Fax: 904-399-8440
                                                        E-mail: npulignano@marksgray.com


                                                        *Attorneys  for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2013, I electronically filed the foregoing Plaintiffs'

Memorandum in Opposition to the United States' Motion to Dismiss for Lack of Subject Matter

Jurisdiction or, in the Alternative, For Improper Venue, or For a Stay with the Clerk of the Court

by using the CM/ECF system, which will send a notice of electronic filing to:

Stephen E. Handler
Senior Trial Counsel
U.S. Dept. of Justice
Civil Division, Torts Branch
1331 Pennsylvania Ave., NW
Room 8070N
Washington, DC 20004
Office: (202) 616-4279
Email: stephen.handler@usdoj.gov

s/ Ray M. Shepard
Ray M. Shepard