UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| Rene Alvarez, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 3:13-cv-174-TJC-MCR |
| United States of America, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

UNITED STATES' RESPONSE TO
PLAINTIFFS' MOTION TO COMPEL DISCOVERY

Before the Court is Plaintiffs' motion to compel discovery.  Dkt # 66.   For the reasons stated herein, the relief sought in Plaintiffs' motion should be denied.

BACKGROUND

I.  Procedural History

Plaintiffs brought this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), §§ 2671-2680, for the financial losses they allegedly suffered as a result of investing in a "Ponzi scheme" operated by Kenneth Wayne McLeod.

On May 3, 2013, the United States filed a motion to dismiss the action for lack of subject matter jurisdiction, asserting, among other defenses, the FTCA's discretionary function exception.  Dkt. ## 11, 25.

On December 10, 2013, the Court denied the United States' motion to dismiss without prejudice.  Dkt. # 32.  The Court stated that it "understands that one or more exceptions to Federal Tort Claims Act jurisdiction may be in play.  However, it is

1

necessary to wait for a more developed record before making any determination of the applicability of these exceptions." Dkt. # 32 at 1.  The Court allowed for an initial discovery period, until July 14, 2014, for Plaintiffs to proceed with discovery, following which the United States may file a renewed motion to dismiss.  *Id*. at 1-2.

The Court granted requests by Plaintiffs for three separate ninety-day extensions of the discovery period: until October 13, 2014 (Dkt. # 56), until January 12, 2015 (Dkt. # 57), and until April 13, 2015 (Dkt. # 61).  In granting the last request for an extension, the Court stated that "the discovery period now ends April 13, 2015 and will not be extended further absent extraordinary circumstances." Dkt. # 61.  Accordingly, discovery is now closed.

The United States' renewed motion to dismiss must be filed by May 15, 2015, with Plaintiffs' response due on June 15, 2015.  A hearing on the motion to dismiss is scheduled for July 30, 2015.  Dkt. # 61.

## II.  Plaintiffs' Discovery Requests

On February 19, 2015, Plaintiffs served a set of Requests for Admission and a set of Interrogatories.  The United States' responses and objections were timely served on March 23, 2015.

On April 2, 2015, the parties met and conferred regarding the above discovery requests.  During that conference, and in the United States' letter dated April 6, 2015, the United States stated its intention to supplement its responses to Requests for Admission Nos. 1-81 (see Exhibit 1 at 1-2) , and in fact did so on April 13, 2015 (see Exhibit 2). The United States also stated its intention to supplement its response to Interrogatory No. 1, to address the any of the Requests for Admission Nos. 2-81 that remained denied

following the United States' supplemental responses (Exhibit 1 at 3).  The United States

provided its supplemental response to Interrogatory No. 1 on May 8, 2015, as well as a

supplemental response to Interrogatory No. 2 providing contact information for former

employees, after obtaining an order from the Court authorizing it to do so  (Dkt. # 67)

(see Exhibit 3).

On March 18, 2014, Plaintiffs served deposition notices for: a deposition of the

General Services Administration (GSA) pursuant to Rule 30(b)(6) of the Federal Rules of

Civil Procedure for April 7, 2015; a deposition of the Department of Justice pursuant to

Rule 30(b)(6) for April 2 (regarding the first topic) and April 9 (for the second topic) (see

Exhibits 4 and 5); and a deposition of Raymond Kirk, a former OPM employee, for April

10, 2015.

Following these depositions, the United States supplemented its responses to

Interrogatories Nos. 3-8, by, among other things, referencing aspects of the testimony

from these deposition (see Exhibit  6).

### III.  Plaintiffs' Motion to Compel

On April 10, 2015, Plaintiffs sought leave to file a motion to compel in excess of

the Court's page limits.  Dkt. # 64.  On April 21, 2015, the Court granted Plaintiffs'

motion for leave and docketed their motion to compel.  Dkt. # 65.

Plaintiffs' motion requests that the Court deem their requests for admissions

admitted and/or compel the United States to "provide amended answers," and to compel

the United States to "provide proper answers" to Interrogatories Nos. 1-4 and 7-10.  Dkt.

# 66 at 125.  Regarding the deposition taken on April 9, 2015, Plaintiffs move the Court

to compel the United States "to make a proper designation of one or more witnesses

3

having knowledge of the matters indicated in Plaintiffs' Rule 30(b)(6) Notices." Dkt. # 66 at 126.

Plaintiffs' motion should be denied. The United States' responses to Interrogatories Nos. 1-4 and 7-8 were sufficient, especially now that they have been supplemented, and the objections to Interrogatories Nos. 9 and 10 should be upheld.

Regarding the Requests for Admission, these requests were denied, and a party cannot litigate over such denials before trial. Furthermore, despite Plaintiffs' lack of assistance in clarifying Requests for Admission Nos. 1-81, the responses to most of these requests were supplemented.

The witness designated for the deposition of the Department of Justice was sufficiently knowledgeable. Regarding the first topic, which relates to the Department's "Plan for Employee Financial Literacy Education," the witness was responsible for reviewing these plans prior to their submission to OPM each year, and actually authored one of the plans. Regarding the second topic, which specifically sought the "DOJ Benefits Officer," regarding the use of outside vendors for retirement and financial education seminars, the witness testified that she was the supervisor of the Department's benefits officer, was well-acquainted with that position and the extent to which the Department had any involvement with the financial education activities of DOJ components, and competently testified to the lack of Department policies or guidance relating to the use of outside vendors for such activities. Thus, Plaintiffs' contention that there was not a proper designation is wrong.

Finally, it is noteworthy that the United States has produced over 261,000 pages of documents to Plaintiffs during the discovery period. Furthermore, because discovery

closed on April 13, 2015, the last day to serve discovery requests was March 13, 2015. *See* Middle District Discovery Handbook (2001) at 3. However, Plaintiffs served several discovery requests the week before discovery closed, well after this deadline – namely, a Second Request for Production on April 7, 2015, requesting that the GSA create a report containing certain information for every single property in its inventory occupied by Plaintiffs' employing agencies (Exhibit 7); a Second Set of Requests for Admission on April 8, 2015, containing twenty-eight additional requests for admission (Exhibit 8); and a Third Request for Production on April 8, 2015, seeking orders and manuals from various DEA and FBI offices and the Federal Law Enforcement Training Center (FLETC) (Exhibit 9). Despite their untimeliness, the United States nevertheless responded to the requests for admission; had the GSA generate the requested report in response to the second request for production, which contained the requested information for over 3,000 properties; and produced documents in response to the third request for production. The United States has not just met, but exceeded its discovery obligations in this case.

## ARGUMENT

### I. Interrogatories Nos. 1-4, 7-10

"The party seeking the discovery has the burden of proving that a discovery response is inadequate." *Weaver v. Mateer and Harbert, P.A.*, 277 F.R.D. 655, 656 (M.D. Fla. 2011) (citation omitted). Plaintiffs have failed to meet that burden here. The United States' objections to Interrogatories Nos. 1 and 2 were well-founded, but Plaintiffs' challenge to these objections are now moot, as the United States subsequently provided supplemental responses that sufficiently respond to these interrogatories.

Regarding Interrogatories Nos. 3, 4, 7, and 8, Plaintiffs devote much of their motion to quibbling over the United States' objections, but mostly overlook the fact that these interrogatories were responded to.  The United States' responses are sufficient, especially now that they have been supplemented.

Regarding Interrogatories Nos. 9 and 10, the United States objections should be upheld.  Therefore, the Court should deny Plaintiffs' request that further responses be compelled.

### A. Interrogatory No. 1

For each Request for Admission Nos. 2 through 83 that were denied, Plaintiffs requested that the United States identify the agency that has "authority, charge, or control of the property."   The United States supplemented its responses to Plaintiffs' Requests for Admissions on April 13, 2015 and, on May 8, 2015, served a supplemental response to Interrogatory No.1 for requests that remain denied (Exhibit 3).  Thus, Plaintiffs' request for a response should be denied.

### B.  Interrogatory No. 2

On April 27, 2015, the Court entered an order authorizing the United States to provide Plaintiffs' counsel with the contact information of the former Federal employees identified in the United States' initial response to this interrogatory.  Dkt. # 67.   On May 8, 2015, the United States provided a supplemental response to Interrogatory No. 2 that provided the information available to the United States (Exhibit 3).  Thus, Plaintiffs' request for a response should be denied.

### C.  Interrogatory No. 3

This interrogatory states as follows: "If you contend the Office of Personnel Management Financial Literacy and Education Strategy ("OPM Strategy") does not require each federal agency to '[e]nsure that their financial education activities are informational and educational in nature and that they do not provide specific financial investment advice, please state the reason(s) for your contention."

The United States responded that: "the United States' position is set forth in the United States' motion to dismiss (Dkt. # 11) and reply brief (Dkt. #25)."

Plaintiffs contend that the United States "failed to respond or assert a legitimate objection."  Dkt. # 66 at 6.  However, the United States did respond, by pointing out that its position was already set forth in its briefs, which addressed this very issue and articulated in great detail the basis for the United States' position that the referenced document places no requirement on Federal agencies.  This is an adequate response.  *Cf. Gutescu v. Carey Intern., Inc.*, 2003 WL 25588545, *4 (S.D. Fla. 2003) ("[A]n interrogatory is not the appropriate means to obtain an legal analysis.  However, to the extent the interrogatory calls for a legal analysis of the Defendants' position, the [briefs] provide the requested information.").

Furthermore, subsequent to the United States' initial response to this interrogatory, Plaintiffs deposed former OPM employee Raymond Kirk, who testified that he was the primary author of this document, and that it and other publications by OPM relating to financial education activities provide guidance rather than any directives to Federal agencies. The United States supplemented its response to this interrogatory to

reference this testimony (Exhibit 6 at 5).[1]  Thus, the United States' response, especially as supplemented, is sufficient, and Plaintiffs' request therefore should be denied.

### D.  Interrogatory No. 4

This interrogatory states as follows: "If you contend the Department of Justice Plan for Employee Financial Literacy Education does not require each federal agency within the Department (FBI, DEA, and ATF) to '[e]nsure that their financial education activities are informational and educational in nature and that they do not provide specific financial investment advice,' please state the reason(s) for your contention."

The United States responded as follows:  "the United States' position is that this document does not set forth, nor was intended to set forth, any mandatory and specific requirements for any Federal agencies to follow."

Plaintiffs contend that this response is "non-responsive to the substance of the question" because it does not provide the "reason" for the United States' position.  Dkt. # 65 at 7-8.  However, the document itself makes clear that it is a report to OPM which describes "goals" and "objectives," and the above-mentioned briefs (the motion to dismiss (Dkt. # 11) and reply brief (Dkt. #25)) explain why such documents are not viewed as setting forth mandatory requirements.

Furthermore, subsequent to the United States' initial response, Plaintiffs deposed the Department of Justice pursuant to Rule 30(b)(6), where the witness testified that the Department of Justice Plan for Employee Financial Literacy Education was viewed as informational and guidance and was not intended to be viewed as Department policy relating to the conduct of financial education activities.  The United States supplemented

---

[1] The parts of the testimony underlying this supplemental response are attached at Exhibit 10.

its response to this interrogatory to reference this testimony (Exhibit 6 at 6-7).[2]  The

United States also supplemented its response to note that the language quoted in the

interrogatory  does not appear in any of Department of Justice's Plans for Employee

Financial Literacy Education in place during the relevant time frame (*i.e.*, before 2010).

Thus, the United States' response, especially as supplemented, is sufficient, and

Plaintiffs' request therefore should be denied.

### E.  Interrogatory No. 7

This interrogatory asked whether the United States would take a "contrary

position" to certain statements in a report by the Department's Office of Inspector

General (OIG) – to wit, that  "DEA officials permitted McLeod to promote himself and

his businesses in DEA facilities, and using DEA official channels," and "concluded that

these actions violated 41 C.F.R. § 102-74.410, which prohibits the use of government

facilities to promote private business, and failed to comply with OPM guidance for

conducting financial seminars issued in October 2006" – and to "explain in detail the

facts you will rely upon to support your contrary litigation position.

The United States responded as follows: "the United States' position is that no

Federal employee violated any statute, regulation, or agency policy during, or in regards

to, any seminar, presentation, or meeting by or with McLeod."

Plaintiffs contend that this response was insufficient, because it did not identify

the facts on which this position is based.  Dkt. # 66 at 10.

First of all, such contention interrogatories that purport to call for a factual

narrative "occupy a somewhat disfavored status" in this district.  *See Freedman v.*

---

[2] The parts of the testimony underlying this supplemental response are attached at
Exhibit 11.

*Lincoln Nat. Life Ins. Co.*, 2005 WL 2850307, * 1 (M.D. Fla. 2005); *see also* The Middle

District Discovery Handbook (2001) at 16 ("Interrogatories that purport to require a

detailed narrative of the opposing parties' case are generally improper because they are

overbroad and oppressive.").[3]

In any event, no recitation of facts is warranted here.  The United States' response

that no violation of the cited regulation occurred is based on the United States' legal

analysis of the proper interpretation of that regulation, and the application of this

interpretation to the putative facts stated in the report.[4]

Furthermore, subsequent to the United States' initial response, Plaintiffs deposed

the GSA and former OPM employee Raymond Kirk.  The United States supplemented its

response by referring to the testimony of these depositions, stating that the GSA witness's

testimony would undermine any assertion that violations of the above-cited regulation

occurred (either by McLeod or DEA employees), and that the testimony of Mr. Kirk

establishes that McLeod's retirement seminars were not inconsistent with OPM guidance

(Exhibit 6 at 12).[5]  Thus, the United States' response, especially as supplemented, is

sufficient, and Plaintiffs' request therefore should be denied.

---

[3] *See also Bashkin v. San Diego County*,  2011 WL 109229, *2 (S.D. Cal. 2011) ("[T]o the extent Plaintiff seeks every minute detail and narratives about the subject incident and every possible surrounding circumstance, written discovery is not the proper vehicle to obtain such detail."); *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("[I]nterrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.").

[4] Although Plaintiffs seek more facts rather than further elaboration on the United States' legal analysis, it should be noted that "an interrogatory is not the appropriate means to obtain an legal analysis."  *Gutescu*, 2003 WL 25588545at *4.

[5] The parts of the testimony underlying this supplemental response are attached at Exhibits 10 and 12.

### F.  Interrogatory No. 8

This interrogatory asked whether the United States would take a "contrary position" to certain statements (altered by Plaintiffs) in a report by the OIG – to wit, that "the steps taken [by the DEA to vet McLeod before allowing him to teach retirement and financial planning seminars] were insufficient, and that the DEA Training Academy should at least have requested a written description of McLeod's academic and professional qualifications, checked on any relevant claimed professional certifications, and performed a credit check on him" – and to "explain in detail the facts you will rely upon to support your contrary litigation position.

The United States responded as follows: "the United States' position is that the steps described above were not required or necessary, nor could they reasonably be expected."

Plaintiffs contend that this response was insufficient, because it did not identify the facts on which this position is based.  Dkt. # 66 at 13.

As noted above, such contention interrogatories that purport to call for a factual narrative are inherently objectionable.  Furthermore, as with Interrogatory No. 7, no recitation of facts is warranted here.  This interrogatory asked about the United States' position regarding whether certain steps to "vet" McLeod should have been taken, and the United States clearly stated its position that they were not.   No further factual elaboration was required, as the United States' position is based on the absence of any regulations or agency policies that would require that such steps be taken.   Indeed, it has been the United States' position from the outset of this litigation (as clearly stated in its first motion to dismiss) that whether and to what extent a contractor is "vetted" before

being used to conduct retirement seminars and financial education seminars is left to the

Government's discretion.    To make this clear once again, the United States

supplemented its response to state that the discovery in this case has confirmed the lack

of any regulations or agency policies calling for the sort of "vetting" described in the

report or Plaintiffs' complaint (see Exhibit 6 at 14).  Thus, the United States' response,

especially as supplemented, is sufficient, and Plaintiffs' request therefore should be

denied.

### G.  Interrogatory  No. 9

This interrogatory states as follows: "Please describe the actions taken by each

federal agency to vet K. Wayne McLeod before allowing McLeod to conduct retirement

and financial education seminars within their agency."   The United States' objections

should be upheld.

This interrogatory is, among other things, premature in light of the posture of this

case.  The Court permitted Plaintiffs to conduct discovery so that it could rule on the

jurisdictional defenses raised by the United States, one of which was the FTCA's

discretionary function exception.   For purposes of the discretionary function exception,

whether the Government was negligent is irrelevant.  *United States v. Gaubert*, 499 U.S.

315, 322 (1991); *Hughes v. United States*, 110 F.3d 765, 767 n.1 (11th Cir. 1997).

Rather, what is relevant to that defense is whether there are any statutes, regulations, or

agency policies specifically relating to the challenged conduct – here, the hiring of a

particular contractor to conduct retirement and financial education seminars.   However,

this interrogatory goes well beyond inquiring into any such regulations or policies (the

non-existence of which, as noted above, has been confirmed as a result of the discovery

in this case).  Instead, it seeks information about the conduct of Federal employees relating to the "vetting" of McLeod, presumably for the purpose of arguing that any such vetting was insufficient and thus negligent.  Because this interrogatory is geared entirely towards discovery on the merits rather than the applicability of the jurisdictional defenses raised by the United States, the United States should not be compelled to respond to it.  *Cf. Ochoa v. Empresas ICA, S.A.B. de C.V*, 2012 WL 3260324, *8 (S.D. Fla) (denying motion to compel because the discovery request was "geared toward the merits of Plaintiffs' claims as opposed to jurisdictional . . . issues" before the Court).

Furthermore, as noted above, interrogatories that call for such factual narratives are inherently overbroad and unduly burdensome.  That is especially true here, given that what the discovery in this case has shown is that the decision to use a particular contractor to conduct retirement seminars and financial education seminars is largely made on an office by office basis, and that the time period alleged in Plaintiffs' complaint spans at least twenty years.  Thus, what this interrogatory contemplates is a detailed narrative of the "vetting" that was conducted each time a particular office used McLeod over a very broad time period.

Even if limited to those seminars Plaintiffs actually attended, a response to this interrogatory could not be formulated at this point, because the United States would need to know where and when these occurred, and who were (or likely would have been) the employees at those offices involved in the decision use McLeod or his company for such training activities.  This information, which is not in the Complaint, is within the knowledge of Plaintiffs, and therefore cannot not be ascertained without discovery from Plaintiffs (which the United States was not permitted to take at this stage of the

litigation).   Accordingly, to expect a response to this interrogatory when the United

States has not been permitted to take discovery would be "oppressive, premature, and

overbroad" and "a waste of time and resources," especially at this stage of the litigation

when such information is not relevant to the jurisdictional defenses before the Court.  *See*

*Bonutti Skeletal Innovations LLC v. Linvatec Corp.*, 2014 WL 186123, *4 (M.D. Fla.

2014) (upholding objection to interrogatory because, among other reasons, the party had

not yet had the opportunity to engage in certain discovery).   Therefore, the Court should

deny Plaintiffs' request for a response. [6]

### H.  Interrogatory No. 10

This interrogatory states as follows: "Please identify the individual or individuals

within each agency who made the decision to allow K. Wayne McLeod to conduct

retirement and financial education seminars within their agency."

The United States' incorporates its response above relating to Interrogatory No. 9,

and re-iterates that it would need to take discovery from Plaintiffs in order to formulate a

response.  Thus, the Court should deny Plaintiffs' request for a response.

## II. Requests for Admission

---

[6] The United States has made several informal requests to Plaintiffs' counsel during this discovery period for this information, to help focus its discovery efforts.  *See* Exhibit 13 (email dated February 26, 2014, asking Plaintiffs' counsel for information regarding dates and locations of seminars attended by Plaintiffs, so that United States could locate documents responsive to request for production), and Exhibit 14 (email dated March 19, 2014 regarding proposed ESI searches, stating that "we are still waiting to hear back from you regarding the dates, locations, and sponsoring-agency for the seminars" Plaintiffs  attended "which we need in order to focus the ESI searches on the right people and places").  This information was not provided.   Plaintiffs cannot complain that the United States has not responded to an interrogatory when they have consistently refused to provide the information that would be needed in order to craft a response.

Plaintiffs move the Court to deem several requests for admission admitted or, in the alternative, to compel the United States to amend its responses.  The Court should deny this relief, because (1) Plaintiffs cannot, at this stage of the litigation, dispute denied requests for admission, and (2) the United States has already provided amended responses to many of the requests.

### A.  Plaintiffs Cannot Litigate Over the Denials of Requests for Admission

Federal Rule of Civil Procedure 36 "is not designed to discover facts, but to obtain admission of facts as to which there is no real dispute and which the adverse party can admit without qualification."  *See Maryland Cas. Co. v. Shreejee Ni Pedhi's, Inc.*, 2013 WL 3353319, *3 (M.D. Fla. 2013).  "In responding to requests for admission, a party may raise objections and may qualify its response beyond a simple admission or denial provided the response addresses the substance of the request." *Rebman v. Follett Higher Educ. Grp., Inc.*, 2008 WL 3928793, *1 (M.D. Fla. 2008).  Because requests for admission are limited to information that is otherwise discoverable, "objections that requests must be relevant are proper." *Foley v. Orange County*, 2013 WL 2477231, *2 (M.D. Fla. 2013) (citation omitted).  Furthermore, "[w]hen a party admits or denies a request for admission, no statement of reasons for the admission or denial is required." *Id.*

Rule 36(a)(6) allows a party to move for more sufficient responses to requests for admissions when a party fails to answer or provides evasive answers.  *See Maryland Cas. Co.*, 2013 WL 3353319 at *3; *see also Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 687 (M.D. Fla. 2005) (contemplating relief only when a party refused to admit or deny a request for admission).  Even in situations where a party fails to answer a

request for admission, "[t]he sanction of deeming a response an admission, however, is a severe one. Rather, the courts generally order an amended answer or order the responding party to make a reasonable inquiry." *See Essex Builders Group, Inc.*, 230 F.R.D. at 687. However, "[t]here is no provision in the Federal Rules of Civil Procedure for a party to litigate a denied request for admission before trial." *Foley*, 2013 WL 2477231at *2.

The United States did not refuse to admit or deny any of the requests for admission, nor did it provide evasive answers designed to avoid the substance of the request.  Rather, after setting forth several well-founded objections to the requests, the United States clearly and unequivocally denied these requests.   Plaintiffs take issue with these objections, but overlook the fact that the requests were denied.  The Federal Rules of Civil Procedure simply do not permit a party to challenge denials to a request for admission at this stage of the litigation.  *Foley*, 2013 WL 2477231at *2.

Although a party need not explain its denials, it is worth repeating that the purpose of Rule 36 is "to obtain an admission of facts *as to which there is no real dispute and which the adverse party can admit without qualification*." *Maryland Cas. Co.*, 2013 WL 3353319 at *3 (emphasis added).  But that is what these requests pertain to – matters that are in dispute.

Regarding Requests for Admission Nos. 2- 81, Plaintiffs requested that the United States admit that certain "Field Division Offices" or other offices or facilities were under the "authority, charge or control" of the GSA.  As written, these requests for admission were inaccurate and thus denied.[7]

---

[7]  As explained in the United States' April 6 letter (Exhibit 1), and as the deposition of the GSA (which included testimony from the GSA's Director of Portfolio Analysis in the Office of Portfolio Management) made clear, it is particular buildings (or

Regarding Requests for Admission Nos. 84-125, it would be an unwarranted burden on the Court to wade through each request and have the parties argue over whether they should be admitted or denied.  Indeed, that is exactly what the Federal Rules of Civil Procedure seek to avoid by not providing an opportunity to litigate over denied requests for admission before trial.  It suffices to say that these requests set forth factual statements or characterizations of alleged events that the United States disputes; set forth legal conclusions (many of which go to ultimate issues in the case) that the United States disputes; and set forth characterizations of regulations or documents that the United States disputes.  Thus, these requests for admission were denied, and the Federal Rules of Civil Procedure simply do not allow for a party to challenge denials to a request for admission before trial.  *Foley*, 2013 WL 2477231at *2.

Indeed, given that this case is still in the motion to dismiss phase (which involves a facial challenge to Plaintiffs' complaint that accepts the factual allegations therein as true), and that United States has not been allowed to engage in discovery, the use of Requests for Admission at this early stage, as well as any attempt to litigate over them, is especially premature.[8]

---

portions thereof), as identified by specific addresses, that would be under the custody and control of the GSA, not an entire "office" or "division" of an agency, which connotes an organizational entity rather than a particular location.  Furthermore, Federal employees assigned to a particular "office" or "division" often are housed in different sites, some of which may be under the custody and control of the GSA, some of which may not.  Thus, if admitted, the United States would have admitted to statements that not only were inaccurate but, frankly, did not make sense.  Notably, the one instance where Plaintiffs did provide a specific and identifiable location (*i.e.*, Requests for Admission 82 and 83), the United States responded with an admission.

[8] In fact, as Plaintiffs note in their motion, the purpose of Rule 36 "is to expedite *trial* by establishing certain material facts as true and narrowing the range of issues for *trial*."  Dkt. # 66 at 97 (citation omitted; emphasis added).  However, there is no pending trial date for this case, and any possible trial would be quite some time away.

**B.  Amended Responses to Requests for Admission Nos. 1, 2-33, 36-51, 60-65, 70-71, and 80-81 Were Provided**

Because the United States already provided supplemental responses to these

requests, any dispute should be considered resolved.

Regarding Request for Admission No. 1, instead of specifying the particular

documents, Plaintiffs simply referenced the entire discovery record, consisting of over

261,000 documents, some of which were obtained from third parties.  Thus, the United

States' objections to this request were valid.  Nevertheless, the United States amended its

response by admitted to "the authenticity and genuineness of all documents produced to

Plaintiffs' by the United States that were created by an employee of a Federal agency."

(Exhibit 2 at 5.)

Regarding Requests for Admission Nos. 2- 81 (stating that various offices or

divisions were under the charge, control, or authority of the GSA), the United States

stated as follows in its April 6 letter:

> I offered to supplement the responses if, for those clients who
> attended seminars at their places of work, you would provide me with the
> addresses for those locations.  Surely this is the sort of information that is
> readily available to you.
>
> However, you stated that you refused to do so.  Instead, your
> position is that the Government should ascertain each and every building
> that  your clients' employing agencies occupied in the geographic areas
> listed in the Requests for Admission from 1989 to the present, regardless
> of whether any of your clients actually attended seminars in such
> buildings, and then determine whether the building is or was under the
> control of the GSA.  Your position is all the more unreasonable in light of
> the fact that none of your clients appear to have attended seminars by
> McLeod even remotely as far back as 1989.
>
> Nevertheless, because your letter does attempt to clarify the
> "locations" that are the subject of Requests for Admission 2-81, the United
> States will, in the spirit of cooperation, supplement several of its
> responses.  Your letter states that the United States should provide an

"answer[ ] for the location and address the government reasonably believes to be the location that is the subject of the discovery question." In an attempt to describe the locations that are the subject of your requests, your letter contains a "screen shot" of the DEA's website that provides an address for the DEA's Miami Division. I take this to mean that this is the building that you are referring to in Request for Admission 8 and 9, which pertains to the "DEA Field Division Office located in Miami, Florida." I also take this to mean that, to the extent the DEA's website likewise provides an address for the particular offices in the cities described in your requests, these are the buildings that are the subject of your requests relating to other DEA offices. You then note that "[t]he same information is readily available for the FBI and other federal agencies at issue in this case." I take this to mean that, to the extent these agencies also provide addresses for certain offices on their respective websites (or in some other way made publicly available), these are the buildings you are referring to in your other requests relating to certain FBI, ICE and CBP offices. The United States will supplement its responses accordingly.

Exhibit 1 at 1-2.

The United States then provided supplemental responses for several of these requests, admitting that the particular buildings reasonably determined to be the subject of the discovery question were Federally-owned buildings under the custody or control of the GSA or buildings leased through the GSA, and the time periods. (Exhibit 2.) The requests for admission that remained denied were addressed in the United States' supplemental response to Interrogatory No. 1. (Exhibit 3.) The United States more than met its discovery obligations by providing these supplemental responses, especially in light of Plaintiffs' lack of assistance in identifying the specific locations that were the subject of these requests.

## III. Rule 30(b)(6) Deposition of the Department of Justice

Plaintiffs' request that the Court compel the United States to designate another witness so they can re-take this deposition (after the discovery deadline) should be

denied.  The witness was sufficiently knowledgeable regarding the topics noted for

deposition. [9]

### A.  First Deposition Notice

The first deposition notice sought the following:

> DOJ official(s) to testify regarding the "Department of Justice Plan
> for Employee Financial Literacy Education." This official should
> be familiar with the Plan, the OPM Guidance upon which the Plan
> is based, and should have knowledge regarding the Department's
> implementation of the Plan within the Department's subordinate
> agencies, the DEA, FBI and ATF.[10]

The United States designated Department of Justice ("DOJ") employee Monica

Doyle for this deposition.  Ms. Doyle is the Senior Advisor to the Director, Human

Resources Office, Justice Management Division, Exhibit 11 at p. 5 ln. 13-18, and from

2010 through 2014, was the Assistant Director for Human Resources Policy and

Advisory Services, Human Resources Office, Justice Management Division.   In that

position, Ms. Doyle was the supervisor of the DOJ's benefits officer, who was

responsible for drafting DOJ's Financial Literacy and Education Plans; reviewed DOJ's

Financial Literacy and Education Plans before they were submitted to OPM; and was the

actual author of  DOJ's Financial Literacy and Education Plan  for 2014.   Exhibit 11 at

---

[9] It also should be noted that following this deposition, Plaintiffs deposed
Raymond Kirk, formerly OPM's Manager of Benefits Officers, Training, and
Development on April 10, 2015, who also testified about the topics in these deposition
notices, namely Federal agencies' financial literacy plans, and financial education
activities by Federal agencies, including their use of outside vendors.  Thus, Plaintiffs had
ample opportunity to explore this subject matter.

[10] Beginning in 2007, OPM asked Federal agencies to create their own financial
education plans that "discuss the agency's goals and objectives for their retirement
financial education program" and "identify the best methods for information delivery for
their employee population."   The Department of Justice, through the Justice
Management Division, has submitted a Financial Literacy and Education Plan for each
year from 2007 to the present.

pg. 17 ln. 7 to pg.18 ln. 25; pg. 23 ln. 13 to pg. 24 ln. 25.  Although "Rule 30(b)(6) does

not require the Rule 30(b)(6) deponent to have personal knowledge of the matters to

which [s]he testifies,"  *Industrial Engineering & Development, Inc. v. Static Control

Components, Inc.*, 2014 WL 4983912, *3 (M.D. Fla. 2014), here the witness  was directly

involved with the creation of several of DOJ's Financial Literacy and Education Plans.

Regarding the contents and substance of the DOJ's Financial Literacy and

Education Plans, she described it as, among other things, "including some higher-level

goals," and explained that it summarized the financial education activities of several

Department components.  Exhibit 11 at pg. 19 lns. 15-23.  The witness also was familiar

with and described the OPM guidance relating to financial literacy plans, which she

explained provided the "general construct" for an agency's plans.  *Id.* at pg. 26 ln. 1 to

pg. 27 ln. 5. As for the implementation of the plan, Ms. Doyle explained that the Plans

are not published or displayed anywhere by the Department following their transmittal to

OPM, nor are they necessarily distributed to each Department of Justice components;

rather, they are provided to Department components if that component's benefits officer

requested a copy.   Exhibit 11 at pg. 21 ln. 9 to pg. 22 ln. 8.  The witness made clear that

there is no requirement, or even an expectation, that the plans be distributed to DOJ

components.  *Id.* at pg. 87 ln. 8 to pg. 88 ln 7.  To the extent a copy is provided to a

component, is intended as "guidance, information."  *Id.* at pg. 21 ln 9 to pg. 22 ln 8; pg.

89 ln. 19 to pg. 90 ln. 7.  Ms. Doyle further testified that the Department viewed it as a

"plan" rather than a "policy," *id*. at pg. 48 ln. 15- 24, and that "it is guidance for the

components or whoever is reading the document on how to conduct financial education

activities.  The people who conduct these activities have to use their judgment in terms of

carrying it out." *Id*. at pg. 61 ln. 11- 20.   This testimony clearly shows that the witness was sufficiently knowledgeable about the topic in the deposition notice.

Finally, the only version of DOJ's Financial Literacy and Education Plan that Plaintiffs came prepared to discuss was the 2013 plan, even though each version was produced in July 2014, nine months before the deposition.[11]  Furthermore, Plaintiffs' questioning specifically focused on language in DOJ's Financial Education and Literacy Plan for 2013 stating that "components must ensure that their financial education activities are informational and educational in nature and that they do not provide specific financial advice."  Exhibit 11 at pg. 37 ln. 1-10; pg. 70 ln 19 to pg. 71 ln. 10.   However, this language did not appear in the Plan until the January 13, 2012 version.   Exhibit 11 at 46 ln. 4-13.   Plaintiffs should not be permitted to re-open discovery to re-take this deposition when, the first time around, they were prepared to discuss only a single version of DOJ's Financial Literacy and Education Plan that was not even in effect until three years after the relevant time frame (*i.e.*, before McLeod's death in 2010), and their focus was on particular language that did not appear in any plan until 2012 (two years after the relevant time frame).

---

[11] The copy of the DOJ Financial Literacy and Education Plan for 2013 used by Plaintiffs as Deposition Exhibit 1 was an un-Bates stamped copy obtained from some source other than the United States' document productions, and counsel was unaware that the plans for each year (from 2007 to 2014) had already been produced:

> Q:  Okay.  And when today's deposition is  over, would you be willing to give copies of those  plans to Mr. MacWilliams so that he can give them to me?
> MR. MACWILLIAMS: You already have them, Ray.
> MR. SHEPARD:  I already have them?
> MR. MACWILLIAMS: They've been in the production set a long time ago.

Exhibit 11 at pg. 47 ln. 8- 16.

## B.  Second Deposition Notice

The second deposition notice sought the following:

> DOJ Benefits Officer or other official to testify regarding the use
> of outside vendors to conduct retirement and financial education
> seminars at subordinate agencies, including the FBI, DEA and
> ATF. A listing of such officers on-line identifies Paula Prince, 145
> N. Street NE, 9W-300, Washington, DC 20530; (202) 616-0006 as
> the HQ Level Benefits Officer for DOJ.

Plaintiffs did not depose any of the specific agencies that employed Plaintiffs or any current or former employees of those agencies.  Instead, Plaintiffs opted to depose the Department of Justice, and specifically referenced the Headquarters-level Benefits Officer for the Department of Justice.

Ms. Doyle was designated for this topic as well, not only because of the overlap between the topics in the two notices, but because, as Assistant Director for Human Resources Policy and Advisory Services, she was the supervisor of the DOJ Benefits Officer – the position specifically referenced in the notice.  As such, she was well-acquainted with the responsibilities and functions of that job, including what involvement, if any, the DOJ Benefits Officer would have with respect to a particular component's financial education activities, including their use of vendors for these activities.  Furthermore, the Justice Management Division "provides advice and assistance to senior management officials relating to basic Department policy for" among other things "personnel management and training," and the Office of Human Resources in particular "supports the Department's mission of administering justice by developing and implementing policy and programs [and] providing guidance." *See* http://www.justice.gov/jmd/about-division.  Based on her positions within this Division, she was knowledgeable about what, if any, Department-wide policies or guidance exist

23

regarding financial education activities in general, and the use of outside vendors for financial education activities in particular.  In fact, Ms. Doyle testified to the Department's lack of policies or guidance relating to the use of outside vendors to provide financial education.  Exhibit 11 at pg. 53 ln. 4-17; pg. 92 at ln. 20-24.   To the extent Plaintiffs intended for the deposition to cover anything else, it is not set forth with "reasonable particularity" in the notice.  Nor did Plaintiffs ask any specific questions about this topic that the witness was unable to answer.  *See Sevi v. Nationstar Mortg.*, *LLC*, 2015 WL 1242795, * 3 (M.D. Fla. 2015) (refusing to allow party to re-take deposition because "Plaintiff's counsel deposed [the witness] for less than five hours, and he asked no questions about [the topic]").  [12]

Finally, the Court should be especially reluctant to re-open discovery for Plaintiffs to take this deposition given that Plaintiffs were afforded fifteen months to take discovery, but waited until April 9th to take this deposition (with just two business days left before the close of discovery on April 13th), thus sharply limiting any time in which to remedy any supposed problems with the deposition before discovery closed and before the United States' renewed motion to dismiss would be before the Court.  *See Sevi*, 2015 WL 1242795 at * 3 (" Plaintiff did not serve Defendant with the Subpoena until eight days before the extended discovery deadline . . . and the Subpoena noticed the deposition for the last day permitted for discovery-September 30, 2014[.]. Thus, by his own actions,

---

[12]  Even if a witness cannot answer certain questions, "[t]he absence of knowledge is, by itself, a fact that may be relevant to the issues in a given case." *Catalina Rental Apartments, Inc. v. Pacific Ins. Co., Ltd.*, 2007 WL 917272, *3 (S.D. Fla. 2007); *Health & Sun Research, Inc. v. Australian Gold, LLC*, 2013 WL 6187576, *3 (M.D. Fla. 2013). This principle is especially applicable here, as any lack of knowledge by a Headquarters-level employee further highlights the degree to which the conduct of financial education activities is left to the discretion of DOJ components like the DEA, FBI, and ATF.

Plaintiff sharply limited the time he had available to remedy any problems with the [deposition].").[13]

## <u>CONCLUSION</u>

For the reasons stated above, the relief sought in Plaintiffs' motion to compel should be denied.


Dated: May12, 2015                           Respectfully submitted,

                                             BENJAMIN MIZER
                                             Principal Deputy Assistant Attorney General
                                             Civil Division
                                             Attorney for the United States, Acting
                                             Under Authority Conferred by 28 U.S.C. §
                                             515

                                             JAMES G. TOUHEY, JR.
                                             Director, Torts Branch
                                             Civil Division

                                             STEPHEN E. HANDLER
                                             E-mail:  stephen.handler@usdoj.gov
                                             Senior Trial Counsel
                                             U.S. Department of Justice
                                             Civil Division, Torts Branch
                                             1331 Pennsylvania Ave., NW
                                             Room 8070N
                                             Washington, DC  20004
                                             Telephone:  (202) 616-4279
                                             Facsimile:   (202) 616-5200

                                               /s/   Phil MacWilliams
                                             PHILIP D. MACWILLIAMS
                                             Trial Attorney
                                             E-mail: phil.macwilliams@usdoj.gov
                                             U.S. Department of Justice
                                             Civil Division, Torts Branch
                                             1331 Pennsylvania Ave., NW
                                             Room 8080N

---

[13]  The Court's final extension of the discovery period was granted on January 12, 2015, but Plaintiffs did not serve deposition notices until over two months later, on March 18, 2014, all of which were scheduled to take place within just ten days of the discovery deadline, including the deposition relating to this particular topic, which was noticed for April 9, 2015 (see Exhibit 5).

Washington, DC  20004
Telephone:  (202) 616-4285
Facsimile:    (202) 616-5200

Attorneys for the United States of America

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2015, I caused to be served upon the following counsel a true and correct copy of the United States' Response to Plaintiffs' Motion to Compel via ECF filing:

Ray M. Shepard
The Shepard Law Firm, LLC
1406B Crain Highway South, Suite 102
Glen Burnie, MD 21601
RShepard@ShepardLF.com

Nicholas V. Pulignano, Jr.
Heath L. Vickers
Marks Gray, P.A.
1200 Riverplace Boulevard, Suite 800
Jacksonville, FL  32207
Office:  904-807-2105
Email:  npulignano@marksgray.com
Email:  hvickers@marksgray.com


/s/   Phil MacWilliams
PHILIP D. MACWILLIAMS