## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

RENE ALVAREZ, et al.,

     Plaintiffs,

v.                                                                    Case No.   3:13-cv-174-J-32MCR

UNITED STATES OF AMERICA,

     Defendant.

_____

## O R D E R

The Court provided Plaintiffs with an initial discovery period to develop the record and enable the Court to determine whether it has subject-matter jurisdiction. (Doc. 32). Plaintiffs filed a motion to compel (Doc. 66) and the government responded (Doc. 73). Plaintiffs agree that many of the topics discussed in the motion to compel are now moot in light of the government's supplemental responses. (Doc. 79). However, Plaintiffs still ask the Court to direct the government to designate additional Rule 30(b)(6) witnesses and seek to compel amended responses to certain requests for admissions and interrogatories.

## I.     30(B)(6) WITNESSES

Plaintiffs served two Rule 30(b)(6) notices on the government. (Doc. 66 at 124). The government designated Monica Doyle, and Plaintiffs took her deposition on April 9, 2015. (Doc. 66 at 125). Plaintiffs contend, without submitting any supporting portions of the deposition transcript, that Doyle lacked sufficient knowledge of the noticed topics, and therefore ask that the government be compelled to designate

witnesses that have sufficient knowledge. (Doc. 66 at 125-26). The government responded and submitted excerpts of the deposition transcript. (Doc. 73; Doc. 73-11). An entity responding to a 30(b)(6) notice should make a diligent inquiry to determine the individual or individuals best suited to testify on the topics. Middle District Discovery (2001) at 6;[1] see also Provide Commerce, Inc. v. Preferred Commerce, Inc., No. 07-80185-CIV, 2008 WL 360588, at *2 (S.D. Fla. Feb. 8, 2008) ("Once a corporation has been served with the Rule 30(b)(6) motion, it has a duty to produce individuals able to testify regarding the matters noticed."). A 30(b)(6) witness does not have to have any personal knowledge of the subject matter. QBE Ins. Corp. v. Jorda Enterprises, Inc., 277 F.R.D. 676, 688 (S.D. Fla. 2012). However, counsel should prepare the designated witness so that the witness can provide complete and meaningful information about the topics of inquiry. Provide, 2008 WL 360588, at *2.

The first notice asked for a "DOJ Benefits Officer or other official to testify regarding the use of outside vendors to conduct retirement and financial education seminars at subordinate agencies, including the FBI, DEA, and ATF." (Doc. 66 at 124). According to Plaintiffs, when Doyle was asked what knowledge she had regarding this topic, her answer was, "None." (Doc. 66 at 125). Doyle testified that, while there are no DOJ Human Resources policies that relate to the department's hiring of outside vendors to provide retirement or financial education to their employees, she did not

---

[1] While the Court cites to the 2001 version of the Discovery Handbook because it was in effect at the time of Plaintiffs' motion, the Discovery Handbook has recently been updated. See Middle District Discovery (2015). Each of the requirements from the 2001 version discussed in this Order have analogues in the 2015 version.

know if there were any non-HR policies that applied to those decisions. (Doc. 73-11 at 20). To her knowledge, the Justice Management Division where she works does not ever provide guidance to subordinate agencies about the use of outside vendors. (Doc. 73-11 at 28).

The government argues that Doyle was knowledgeable about Department-wide policies regarding the use of outside vendors and that it is relevant that she lacks knowledge of any such policies. Both may be true. However, the notice did not refer to Department-wide policies, it asked for an official to testify regarding the use of outside vendors to conduct retirement and financial education seminars at subordinate agencies. Since the DOJ apparently hires outside vendors, someone in the Department, whether it be a person who makes those hiring decisions or someone else, must know something about the use of such outside vendors. Doyle, however, was not prepared to give complete and meaningful information about the topic.

The second notice asked for "DOJ official(s) to testify regarding the 'Department of Justice Plan for Employee Financial Literacy Education.' This official should be familiar with the Plan, the OPM Guidance upon which the Plan is based, and should have knowledge regarding the Department's implementation of the Plan within the Department's subordinate agencies, the DEA, FBI, and ATF." (Doc. 66 at 124). Plaintiffs complain that Doyle had not reviewed the OPM Strategy until she prepared for the deposition, was not the subject matter expert on the DOJ Plan, and had no knowledge regarding the DOJ's implementation of the Plan within the Department's subordinate agencies. (Doc. 66 at 125). However, Doyle had reviewed the OPM

Strategy, and understood that OPM provided a structure for the DOJ Plan. (Doc. 73-11 at 14-15). As part of her job, Doyle reviewed the DOJ Plans each year from 2010-2014 and drafted the plan for 2013. (Doc. 73-11 at 8). Doyle was sufficiently knowledgeable about the Plan and the OPM Guidance.

With respect to the implementation of the Plan within the DOJ's subordinate agencies, Doyle testified that the Plan "is guidance for the components . . . on how to conduct financial education activities." (Doc. 73-11 at 21). She said it was possible that the Plan was distributed within the DOJ because it "may be given to certain components when they ask for it." (Doc. 73-11 at 10). However, she did not know one way or another whether the Plan was given to DOJ components. (Doc. 73-11 at 26). It may be that the subordinate agencies do not implement the Plan at all. In which case, a deposition on that topic would be exceedingly short. However, Doyle did not know whether the subordinate agencies got the Plan, read the Plan, or followed the Plan. As such she lacked sufficient knowledge about the implementation of the Plan within the DOJ's subordinate agencies.

Plaintiffs may depose an additional 30(b)(6) witness, but are limited to questions about the use of outside vendors to conduct retirement and financial education seminars at subordinate agencies and the implementation of the Plan within the DOJ's subordinate agencies. See Peacock v. Merrill, No. CA 05-0377-BH-C, 2008 WL 509636, at *5 (S.D. Ala. Feb. 22, 2008) (placing limits on a second deposition of a party).

## II.    REQUESTS FOR ADMISSION

Plaintiffs request amended answers to 46 requests for admissions.[2]  In response to each of those requests, the government listed a series of objections and then stated that, subject to those objections, the request for admission was denied. (See, e.g., Doc. 66 at 56). Plaintiffs make three arguments. First, they contend that a party cannot refuse to admit or deny a request based on lack of personal knowledge if the information is readily available to the party. (Doc. 66 at 18-19, 55). But Defendants did not refuse to admit or deny any of the requests at issue, they flatly denied each one. Second, Plaintiffs state that the government's objections to the requests are meritless. (Doc. 66 at 19). However, that is irrelevant, because the government answered the requests despite the objections.

Third, Plaintiffs argue that the government's answers are evasive and meritless. (Doc. 66 at 20, 56). In support, Plaintiffs cite to a case for the proposition that an evasive denial, meaning one that does not specifically deny the matter or does not set forth in detail why the party can neither admit or deny the matter, may be deemed an admission. (Doc. 66 at 97) (citing Asea, Inc. v. S. Pac. Transp. Co., 669 F.2d 1242, 1245 (9th Cir. 1981)). However, that proposition is inapposite as the government has specifically denied each request for admission at issue. Plaintiffs contend that those denials are meritless, in part because many of them allegedly contradict the OIG Report on the DEA's relationship with McLeod. However, the Court is not permitted to weigh the substantive accuracy of a denial at this early stage in the case. Point

---

[2] The requests are 34, 35, 66, 67, 78, 79, 84-122, and 124. (Doc. 66).

Blank Solutions, Inc. v. Toyobo Am., Inc., No. 09-61166-CIV, 2011 WL 742657, at *3 (S.D. Fla. Feb. 24, 2011). As the government's responses meet the formalities of Rule 36(a) by denying the matters at issue, the government need not amend its responses. See Cabrera v. Gov't Employees Ins. Co., No. 12-61390-CIV, 2014 WL 2999206, at *17 (S.D. Fla. July 3, 2014). However, this ruling is without prejudice to renewal at a later stage of the litigation.

### III.   INTERROGATORIES

A party must provide a responsive, full, complete, and unevasive answer to all interrogatories. Essex Builders Grp., Inc. v. Amerisure Ins. Co., 230 F.R.D. 682, 685 (M.D. Fla. 2005). If a party lacks the necessary information to do so, it should say so and set forth its efforts to obtain the information. Id. Plaintiffs assert that the government has failed to appropriately respond to seven interrogatories.

### A.   Interrogatory 1

Requests for Admission 2-83 ask the government to admit that certain properties are under the authority, charge, or control of GSA and have been since at least 1989. (See, e.g., Doc. 66 at 17). For those Requests for Admission 2-83 that the government did not admit, Interrogatory 1 asked the government to identify the person or agency having authority, charge, or control of the property and the period for which they have had such authority, charge, or control. (Doc. 66 at 1-2). As Plaintiffs did not provide any information about Requests 74, 75, 82, and 83 in their motion to compel, the Court assumes those Requests are not at issue. (See Doc. 66).

The remaining properties can be broken into four categories. First, the government admitted that some of the buildings discussed were under the custody and

control of GSA. (<u>See, e.g.</u>, Doc. 73-2 at 9). The government therefore did not need to respond to Interrogatory 1 with respect to those properties. Second, the government denied that GSA had authority, charge, or control over certain properties, but provided a supplemental response to Interrogatory 1 that indicated who has authority, charge, or control of the properties. (<u>See, e.g.</u>, Doc. 73-3 at 5). The government therefore provided exactly the information Plaintiffs sought as to those Requests.

Third, for some of the properties mentioned, the government admitted that GSA has a lease for some portion of the building, but otherwise denied the request for admission. (<u>See, e.g.</u>, Doc. 73-2 at 7). In other words, the government denied that GSA has authority, charge, or control of the building, but provided no answer as to who does have authority, charge, or control of the building, and did not indicate that the government lacks the necessary information to determine that fact. The government should therefore file an amended response to Interrogatory 1 as to Requests for Admission 2, 3, 8-25, 28, 29, 32, 33, 36-41, 44, 45, 50, 51, 60, 61, 64, 65, 70, 71, 80, and 81.

Fourth, as to six requests for admission, the government denied the request in whole but did not provide any information on the properties in its response to Interrogatory 1. Requests 34 and 35 deal with a DEA Field Division Office in Lake Tahoe, Nevada. (Doc. 66 at 54-55). The government stated in response to the request for admission that it was not aware of any buildings or space occupied or used by the DEA in Lake Tahoe, Nevada. (Doc. 66 at 55). Requests 66 and 67 asked about the Customs/ICE Field Division Office in Reston, Virginia. (Doc. 66 at 85-86). The

government responded by saying it is not aware of any buildings or space occupied by CBP or ICE in Reston, Virginia. (Doc. 66 at 85). Requests 78 and 79 refer to the North Florida Investigative Support Center in Jacksonville, Florida. (Doc. 66 at 93-94). The government stated that it could not determine which particular building or space these requests referred to. (Doc. 66 at 94). It appears, therefore, that the government lacks sufficient information to respond to Interrogatory 1 as to these Requests. However, the government did not say so. The government shall file an amended response to Interrogatory 1 as to Requests 34, 35, 66, 67, 78, and 79. If it lacks the necessary information to answer the question, it should say so under oath and set forth its efforts to obtain the information.

### B.     Interrogatories 3 and 4

Interrogatory 3 asks the government for the reason or reasons for its contention that the OPM Strategy does not require each federal agency to ensure that financial education activities do not provide specific financial investment advice. (Doc. 66 at 5). In its supplemental response to that interrogatory, the government states that Raymond Kirk testified that the OPM Strategy provides guidance, not a requirement. (Doc. 73-6 at 5).

Interrogatory 4 asks the government for the reason or reasons for its contention that the DOJ Plan does not require each federal agency within the Department to ensure that their financial education activities do not provide specific financial investment advice. (Doc. 66 at 7). The government initially responded by saying that the document does not set forth any mandatory and specific requirements for agencies to follow. (Doc. 66 at 7). The government then supplemented that response by

referencing the testimony of Monica Doyle, stating that she testified that the DOJ Plan was mere guidance, not a requirement, and that the language regarding specific financial investment advice was not included in the Plan before 2010. (Doc. 73-6 at 6-7).

The government has responded to the interrogatories by explaining that it believes the DOJ Plan and OPM Strategy are guidance, not mandatory requirements. The government then provided deposition testimony that it believes support those positions. [3] The government has provided a full and complete answer to Interrogatories 3 and 4.

## C.    Interrogatories 7 and 8

Interrogatories 7 and 8 ask the government for the facts it will rely upon to support litigation positions contrary to the OIG Report's findings. (Doc. 66 at 8, 11). Interrogatory 7 refers to the OIG's finding that "DEA officials permitted McLeod to promote himself and his business in DEA facilities, and using DEA official channels," and conclusion "that these actions violated 41 C.F.R. § 102-74.410, which prohibits the use of government facilities to promote private business, and failed to comply with OPM guidance for conducting financial seminars issued in October 2006." (Doc. 66 at 8). The government responded by stating that it believes no federal employee "violated any statute, regulation, or agency policy during, or in regards to, any seminar,

---

[3] Typically, it is insufficient for a party to answer an interrogatory by referring to an extrinsic matter, such as a deposition. Middle District Discovery (2001) at 16. Here, however, the government did not cite generally to a deposition, but gave a specific answer to the question asked and pointed to the deposition as supporting evidence.

presentation, or meeting by or with McLeod." (Doc. 73-6 at 11). The government further stated that it does not agree with the statement that "DEA officials permitted McLeod to promote himself and his businesses in DEA facilities, and using DEA official channels" because it does not believe the discovery record supports that assertion. (Doc. 73-6 at 12). In conclusion, the government referred to deposition testimony which it believes undermines any assertion that any regulation or policy was violated. (Doc. 73-6 at 12).

Interrogatory 8 refers to the OIG's finding that the DEA took insufficient steps to vet McLeod before allowing him to teach retirement and financial planning seminars and that "the DEA Training Academy should at least have requested a written description of McLeod's academic and professional qualifications, checked on any relevant claimed professional certifications, and performed a credit check on him." (Doc. 66 at 11). The government responded that such steps were not required or necessary, nor could they be reasonably expected. (Doc. 73-6 at 13-14). Further, the government stated that discovery has confirmed the lack of any regulations or agency policies calling for that sort of vetting. (Doc. 73-6 at 14).

Plaintiffs argue that both responses fail to identify any facts the government intends to rely upon in support of its position. (Doc. 66 at 10, 13). With respect to Interrogatory 7, the government responds that no recitation of facts is necessary because the government's position is that, even taking the facts in the report as true, no violation of the regulation occurred.[4] (Doc. 73 at 10). Likewise, the government

---

[4] The government also disputes the factual findings of the report. (Doc. 73-6 at

argues that no facts are necessary to support its response to Interrogatory 8 because its position is based on the absence of any regulation or policy requiring the government to vet McLeod or FEBG. (Doc. 73 at 11-12).

"Interrogatories that generally require the responding party to state the basis of particular claims, defenses, or contentions in pleadings or other documents should be used sparingly and, if used, should be designed (1) to target . . . contentions that the propounding attorney reasonably suspects may be the proper subject of early . . . resolution or (2) to identify and narrow the scope of unclear claims, defenses, and contentions. Interrogatories that purport to require a detailed narrative of the opposing parties' cases are generally improper because they are overbroad and oppressive." Middle District Discovery (2001) at 16. Even assuming arguendo that Interrogatories 7 and 8 are nevertheless appropriate, the government has sufficiently answered them, as it need not allege "specific facts" in support of positions that are based on the absence of evidence.

### D.   Interrogatories 9 and 10

Interrogatory 9 asks the government to describe actions taken by each federal agency to vet McLeod before allowing him to conduct retirement and financial education seminars. (Doc. 66 at 13). Interrogatory 10 asks the government to identify the individual or individuals in each agency who decided to allow McLeod to conduct retirement and financial education seminars. (Doc. 66 at 14).

---

12).

The government objects to both interrogatories, arguing that they are premature because they do not pertain to the jurisdictional issues intended to be the target of this initial discovery period. (Doc. 73 at 12-14). Plaintiffs contend that the government failed to adequately investigate McLeod and FEBG before hiring FEBG to conduct retirement seminars. (Doc. 1 at 26-27, 31). The government retorts that any failure to investigate is irrelevant because, regardless of any negligence in its investigations of McLeod and FEBG, Plaintiffs' claims are barred by the discretionary function exception. (Doc. 73 at 12). At this point, the government need not respond to Interrogatories 9 and 10.

Accordingly, it is hereby

**ORDERED:**

Plaintiffs' Motion to Compel (Doc. 66) is **GRANTED in part and DENIED in part** as discussed above. The government must provide an amended answer to Interrogatory One and the 30(b)(6) deposition must be taken no later than **September 15, 2015**.

**DONE AND ORDERED** in Jacksonville, Florida the 5th day of August, 2015.

TIMOTHY J. CORRIGAN
United States District Judge

w.
Copies to:

Counsel of record